**Name of Person Filing:** JAWAD AlkHAllouFi
**Address:** 2715 west GRenadine Rd
**City, State, Zip Code:** Phoenix AZ 85041
**Telephone:** 480 343 85 93
**In this case I am a:** ☒ Petitioner/Plaintiff ☐ Respondent/Defendant

FOR CLERK'S USE ONLY
MICHAEL K. JEANES
Clerk of the Superior Court
By Dorotha Stephens, Deputy
Date 09/27/2010 Time 11:36:02

| Description | Amount |
|---|---|
| CASE# CV2010-027856 | |
| CIVIL NEW COMPLAINT | 301.00 |
| TOTAL AMOUNT | 301.00 |

Receipt# 20861696

## SUPERIOR COURT OF ARIZONA
## MARICOPA COUNTY

JAWAD AlkHAllouFi
Name of Plaintiff/Petitioner

FRY's Food And DRUGS.
Name of Defendant/Respondent

Case Number: CV2010-027856

Title: Discrimination:
origin Phtie:

See AttAchment

Jawad 9-27-2010

my Letter: why I get suspended and fired:                    1 _ oF 1

FRom: JAWAD Letter    Reason For Dishaged me:    7/ 07/2010
                        " "                       U-T FAir!

I feel I was terminated from my job was due to not only my religion, but my difficulty in my ability to converse in
English. I am a Moroccan and my religious beliefs are of the Muslim faith. I have worked for Fry's Food & Drug
for almost three years. During the first two years, I never had a problem with any of my supervisors or Loss
Prevention management until earlier this year. I have worked for three different supervisors and never had any
problems. complaints or have been written up over bad conduct, poor performance or any other problems
concerning my job.

During the last three months, I have been singled out and targeted by Loss Prevention management. I was
informed by two different Loss Prevention Agents that a Zone Loss Prevention Supervisor was speaking poorly
of me. This supervisor Eric McCorvey stated on numerous occasions to another Loss Prevention Agent in his
zone that I was a poor agent and that I made bad stops. Mr. McCorvey went on to comment that all I do is
make small and candy bar stops. As I stated earlier, I don't even work or have ever worked in this supervisor's
zone. According the LPA Viola Y, Mr. McCorvey was always saying negative comments towards me. LPA Viola
called me and informed me as to what Mr. McCorvey was saying. Naturally, I was upset and decided to notify
the Loss Prevention Manager Joe Kopelic. Loss Prevention Manager Joe Kopelic advised me to contact
Human Resources regarding this matter. Both Mr. Kopelic and Human Resources stated they would look into it
and get back to me. At the time, Mr. McCorvey had just came off a 30 day suspension for speaking negatively
about the Loss Prevention Manager Joe Kopelic. You would think Mr. McCorvey would have learned his lesson
and not speak poorly about anyone in the Loss Prevention department. It was obvious that Mr. McCorvey was
still mad and hurt by his suspension. I was also informed by LPA John Brassfield that he too has heard Mr.
McCorvey speaking poorly about myself and whether or not I had made any bad stops lately. To date, my
complaints of the negative comments and harassment has not been addressed.

About two months ago, Frys re-aligned the different zones. I was placed in another zone with not only a
different supervisor, but with other agents as well. This was when Mr. McCorvey started the negative
comments and the harassment. Two of the agents of this
new zone used to work for Mr. McCorvey and another Zone Loss Prevention Supervisor Dennis Jerin. Ever
since these two agents have been in my new zone, they have continuously harassed me by testing negative
comments to my cell phone and have reviewed most of my stops. In their testing, they have commented I was
a liar and that I was a thief. The reason why they review my stops is to see if they can find anything wrong with
my stops and report writing. Then they would report it back to Mr. McCorvey and Mr. Jerin. At this time, Mr
Jerin was given the job title of Organized Retail Crime Manager and would be also over all of the Zone Loss
Prevention Supervisors. At times when working with these two agents they would try to set me up on purpose
in order to get me to make a bad stop. They would tell me that a person concealed merchandise and tell me to
stop the person at the door. During times I did make a stop, the agents would totally back off from me leaving
me with no one to watch my back.

About a month ago, I was suspended for making a bad stop. As agents, bad stops can and will happen from
time to time. The policy regarding bad stops is suspension for the first one and then termination for the second
one within a years time. I just recently had a stop where the suspect approached and selected items and then
concealed them in plastic shopping bags he had already upon entering the store. When I stop the suspect, of
course he stated he didn't steal or shoplift anything. I knew he had it in one of his bags due to I saw him bag up
the item. As I was going through his first bag, the two agents that have been harassing me came walking in the
store. They immediately started watching me with the suspect. During this time I was so frustrated and afraid
that these two agents were going to try to get me into trouble for the stop, I forgot to check the second bag. I
just released the suspect and let him go. I knew that the two agents were going to report back to Mr. Jerin and
Mr. McCorvey regarding my stop. Sure enough it was just a matter of time before I was informed by my new
supervisor Frank Robinson that the two agents were saying I had made a bad stop. My supervisor reviewed

EKOC - Yahoo! Mail

ᒍᗩᗯᗩᗷ lᑕᕼᏳ:

the video of my stop and didn't feel it was a bad stop. My supervisor knew I got frustrated due to these agents walking in the store at the time of my stop. My supervisor viewed on video where the suspect did approach and selected the item listed in the report. As I understand, Mr. Jerin and Mr. McCorvey wanted me fired for this. In the end, I was just counseled by my supervisor.

On June 10, 2010, the Loss Prevention Manager Joe Kolpelic had a department meeting for all the agents and the supervisors. The purpose of the meeting was to go over the new shoplift policy and to discuss and address any issues the agents had regarding this new policy. The new shoplift policy changed to a no touch policy regarding stopping all shoplifters. If the agents were to stop a shoplifter, the agents were not in any way to touch the suspect. If the suspect did not want to come back into the store or want to give
back the product, we as LPA's were to just let them go. There was going to be no touching period during the attempt of detaining a shoplifter. We also discussed bad stops and the punishment that would occur if a bad stop were to happen. First one was suspension and if a second bad stop were to happen within a year, the agent would be fired. ORC Manager and Assistant Loss Prevention Manager Dennis Jerin stated in the meeting that he would be reviewing all bad stops. He assured all agents that bad stops would not be tolerated and suspensions and termination would be enforced. All the agents went through the shoplift policy and after discussing it with management signed a copy stating we knew the rules and were aware of the what was expected of us regarding the stopping of shoplifters. The subject of favoritism came up in the meeting. Some of the agents felt there was favoritism in the department concerning certain agents who were and were not suspended for bad stops. We all were assured by both the Loss Prevention Manager and ORC and Assistant Loss Prevention Manager that all agents would be treated equally. That the suspension and terminated rule would apply to all agents regardless of who they were.
After the June 10, 2010 meeting, the agents went to their assigned stores for the remainder of the day. That evening after the new policy meeting, there were three agents that broke policy regarding the stopping of shoplifters. One agent, Karen Rogers grabbed a female suspect's purse while trying to stop her. The suspect's purse strap got tangled in Ms. Roger's arm where she couldn't get her arm out. During the grabbing of the suspect's purse by Ms. Rogers, the suspect's boyfriend came up with a knife and cut the purse strap loose. After the strap was cut, both the female suspect and the male suspect ran away only to be caught later by Mesa Police. Just hours after the new no touch policy meeting, agent Rogers not only touched the female suspect, but grabbed her purse as well. To date, no action has been taken again Ms. Rogers. In another incident and only hours after the meeting, both agent's Pepper and Livingston made a bad stop. Both agents stopped a older lady who went through U-Scan with various items and a case of bottled water. Agent's Pepper and Livingston stopped this lady for not paying for her case of water when in fact she did. The agents didn't see the U-Scan attendant scanned the lady's water using a scan gun and also by scanning the bar code at the attendant's desk. Of course the lady was not only shocked to be accused of stealing, but was also very hurt as well. The lady was crying and wanted the corporate phone number so she could call and complain. The Assistant Manager at the time gave the lady a ten dollar gift card for her trouble. The lady even came back to the store later that evening with her receipts showing she wasn't a thief. To date, nothing has happened to these two agents. According to the old and the new policy, both of these agents should have been suspended. Both the Loss Prevention Manager Joe Kopelic and ORC Manager Dennis Jerin have tried and was apparently successful in covering this bad stop up, therefore the two agents were not suspended.
..The following week, agent Greg Powell made a bad stop. Mr. Powell observed a female juvenile on the liquor aisle. The female juvenile approached and selected a bottle of liquor. The suspect tried to conceal the bottle of liquor in her purse, but for some reason ditched the bottle on the Pet aisle. When agent Powell stopped the female juvenile, the suspect didn't have the bottle of liquor on her. Agent Greg Powell got suspended for stopping this individual. On June 27, 2010, I made a stop of a juvenile female suspect that stole a DVD. The female suspect took the DVD into the bathroom and came out of the bathroom without the DVD. The store's greeter told the suspect that security was by the door and was going to stop her for the theft of the DVD. After hearing this, the suspect approached the door and myself, took out the DVD and gave it to me. The suspect admitted to stealing the DVD not only to myself, but her parents as well. The suspect also admitted to stealing other items on various days. My employment with Frys was terminated due to what was called a bathroom stop. I as well as other agents felt that we could make bathroom stops as long as we were confident the suspect had the items and we had the empty packaging. There is nothing written in the policy stating we could

EEOC - Yahoo! Mail                    Page 3 of 3

JAWAD PeHG:

not make bathroom stops. I guess Loss Prevention Manager Joe Kopelic and ORC Manager Dennis Jerin felt this was their best shot to get rid of me and have me fired. Even though other agents have made bathroom stops before without any type of punishment by management.

I feel that I have been discriminated against due to my religious beliefs, not fitting in the Loss Prevention manager and the ORC and Assistant Manager's group and my inability to perfect the English language even though I know six other different languages. It amazes me to think that a Loss Prevention Manager or any department manager would allow this kind of behavior. But, it obvious if you don't fit in their little group and they do not like you, they will do anything to get rid of you and even fired. As I stated earlier, agent Greg Powell and myself were suspended for making bad stops. On both of our bad stops, Greg and I both had reasonable cause to stop and question the suspect. Agents Pepper and Livingston stopped an older lady who had purchased all of her groceries. Both of these agents did not have reasonable cause to stop this lady. They should have known the U-scan attendant could and probably would have scanned her case of water.

7/07/2010.

# Witness letter:

Agent Brassfield: letter: As witness:

Agent Brassfield Reseived E-mail From

MR Joe Kopelie As Retaliation and Threat:

Agent Brassfield File a change Also with

E.E.o.c. For Retaliation After he was

Expressing his opinion.

Frank,

The reason for this e-mail is to express my concern and disappointment in the direction of where our department is headed. First of all, let me say I understand the new policy regarding the shoplift. I have no problems with it, but I do have a problem with what appears to be favoritism towards certain people regarding stops and bad stops. As you know, recently we have had a number of bad stops where some of the agents have been suspended while others have not. The policy regarding bad stops should be enforced regardless of who the agent is or what zone, group or who the person is friends with within the department. The disciplinary action should be same across the board and should be between the DLPS of that zone and the Loss Prevention manager.

During our last meeting, the subject of favoritism regarding bad stops was even brought up. It was mentioned then that it appeared to be some form of favoritism towards disciplinary action regarding bad stops. We all were assured that there wasn't any favoritism and that every agent would be held accountable and be disciplined the same regardless of who the agent was or in what zone they were in. Over the past month, it is evident to me that there are two different sets of rules. It was also mentioned in the meeting all bad stops were going to be reviewed by Dennis Jerin. I would like to recommend that all stops (good or bad) be reviewed on a random basis. I have personally witnessed and viewed agents when making a stop being as much as twenty to thirty feet behind the shoplifter. I've seen in person and have viewed DVR where the agents are not even at the exit door by the time the subject approaches the outside sidewalk. I've witnessed these agents being so far behind the subject when making a stop, not identifying themselves. By the time these agents approach the subject outside, they are in the habit of reaching out and grabbing the subject which has in the past has resulted in fights and/or confrontations.

It's amazing how we all wonder why certain agents are always getting into fights, confrontations or scuffles? I would have to question why their managers haven't spent the time investigating the problem and/or reviewing their stops in order to see why or if there's a problem in the way they make stops. That way, if there was a problem in their stopping procedures, they could receive additional training. In a matter of a week of reviewing DVR, I was able to determine why these agents were getting into all of the above. If this would have been done earlier by prior managers, this problem could have been corrected through additional training. We have agents that are constantly stopping shoplifters outside the store at the edge of the sidewalk. Agents being so far behind that all they have time to do is grab the subject and take down the subject to the ground if the subject pulls away. We all know that if any of us or customers is grabbed without any identification that person's natural response is going to resist and/or start protecting themselves for the fear of them not knowing what's going on. We have agents even stopping people beyond the twenty feet as policy dictates and not being reported in their write-ups. We have agents following subjects off store's property sometimes as far as over 200 yards. Both of these are against not only Frys policy, but Krogers as well. But yet, nothing is done or no disciplinary action is taken against these agents.

Let's take the recent bad stops and break them down. Greg Powell just recently got suspended due to a juvenile female subject had walk onto the liquor aisle. The subject approached and selected a bottle of liquor. The subject then tried to conceal the bottle, but for whatever reason she decided to ditch the bottle. Greg did stop her at the door and realized she didn't have the liquor. Yes, that was a bad stop. But, seeing the subject was a juvenile and was in the liquor aisle, I could see where any one of us could have made that mistake. Let's take Jawad's most recent bad stop at store #05. Even though he didn't have all of his elements, the subject did steal and admitted it not only to Jawad, but to her parents as well. She stated she has been stealing from Frys for long time before getting caught. Myself, I always thought that we could make a bathroom stop as long as we were confident the subject had the items and we had the disposed packaging in our possession. I thought we had revised the constant surveillance policy to continuous surveillance? Now, let's take Nate and Shane's bad stop over at store #05. This was a bad stop, period. The lady they stopped not only paid for her water, but she was going through U-Scan. The U-Scan attendant (who is an Asst. FEM) scanned her bottled water using the barcode at U-Scan. Why would they even watch someone at U-Scan with bottled water? Personally, I don't watch U-Scan for anything other than liquor or meat. Even if the U-Scan attendant didn't scan the bottled water, all the lady had to say she didn't realize the attendant did charge her for it. In making stops, we as agents do have to use some common sense regarding stopping people. As I understand from store #05, the lady they stopped was crying and so hurt, she even came back into the store later that evening with receipts showing she wasn't a thief. I would imagine that this could have and may have resulted in legal action. As I stated earlier, this was a bad stop in every way. The lady shopped throughout the store, went through U-Scan and paid for her groceries, but yet was still stopped and accused of shoplifting. It funny how these agents are quick to add each other in their report as additional persons involved in the detention of a shoplifter, but they are not so willing to add each other when it comes to making a bad stop. Upon reviewing the DVR, it obvious they both made the stop. It wasn't like the other LPA had to be at his side for backup in case the situation got out of control. The lady was not very big and I believe older as well. You can see on DVR that as soon as the agents realized they made a mistake, they instantly backed off. To believe that no suspension resulted in this is totally beyond me.

In conclusion, over the last several months it seems like the department is out of control. It seems we have two different sets of rules regarding policy for certain agents. We have agents lagging behind as much as twenty to thirty feet when stopping people. Agents grabbing subjects without identifying themselves as Fry's Loss Prevention. Agents stopping people beyond the 20 foot policy as well as following subjects off store's property as much as over 200 yards which both are against policy. Agents and DLPS working in other stores and zones without the knowledge of the management. If possible, I would like to conduct LPA Audits on a full-time basis. Due to all the problems stated above, I feel that there's a witch hunt per say on agents who are not within a certain group or liked by a certain manager. I feel it would be just a matter of time before I get singled out and targeted as Jawad and others not in the above described group. We all know that Jawad has been singled out and targeted. I have not only heard the comments

first hand, but have witnessed it as well. So, if there is any way I can permanently be assigned to conduct LPA Audits vs. shoplift duty, I would appreciate it.

Thank you,

John Brassfield
*Fry's Loss Prevention*
Zone 3
480-266-8080

SEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 540-2010-03004 |

| Arizona Attorney General's Office, Civil Rights Division | and EEOC |
|---|---|

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)*<br>**Alkhalloufi Jawad** | Home Phone *(Incl. Area Code)* | Date of Birth<br>**08-02-1967** |
|---|---|---|

| Street Address<br>**2715 West Grenadine Road, Phoenix, AZ 85041** | City, State and ZIP Code |
|---|---|

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>**FRY'S FOOD AND DRUG** | No. Employees, Members<br>**500 or More** | Phone No. *(Include Area Code)*<br>**(602) 442-9000** |
|---|---|---|

| Street Address<br>**5305 West Buckeye Road, Phoenix, AZ 85043** | City, State and ZIP Code |
|---|---|

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|

| Street Address | City, State and ZIP Code |
|---|---|

**DISCRIMINATION BASED ON** *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **06-17-2010**    Latest

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by the respondent company on or about May 20, 2007 as a Lost Prevention Agent.

On or about June 17, 2010 and June 28, 2010, I was suspended for an alleged violation of company policy. On or about July 2, 2010, I was terminated for said or similar violations.

I know of other non-Arabic employees that had similar violations and were not disciplined as harshly as I was and their discipline was not in accordance with company policies.

I believe I have been discriminated against based on my National Origin, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Jul 06, 2010**          _[signature]_<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

JAWAD AlkHAlloUFi

Fimancial hanshiPs.

1) LosT vehicle due To being Teamimuted (couldn't make The payments).

2) eRedit mow damaged To The volunTaRy Repossesioof my vehicle.

3) changed cell phone sewlice provides du To being Teminuted

4) HAd To PAY $1000 To my aparthment complex To get out of myleuse (couldn't afFoRd The monthly Rent Payment.)

5) I'm late on my house mongage Paymend:

6) didn't Received my enamployment on Time DueTo FAy's appeal with social sec security and Thy To declimed.

7) could afFond The Food and Thigs I'm a cusTom To du To being Teminuted by FAys which cause be To be séc in my health.

- very Hight colosTenoL 237 supose To be 37
- inFection in my sTomach: kind oFuTcer:

DUE Emotinal and physical stress To due wrongFul Termination. by FAys: .

JAWAD    6/27/2010.

my STOP: wich I was Fired:

JAWAD!

Policy Neva SAY oR in writing That we

Cam not make BAthnoom Stop:

last meeting MR Joe Kopelic loss prevention

meenage SAY Yes we can iF we ARe confident

and oR we have The ivedence us Package:

Case #: 660-00005-10-SHOP-122  Shoplifting  System ID:756242                    Page 1 of 3

## INCIDENT REPORT

☒

## INCIDENT INFORMATION

| | | | |
|---|---|---|---|
| Case Number: | 660-00005-10-SHOP-122 | Total Case Value: | $7.99 |
| Incident Type | Shoplifting | Method of Operation | Purse |
| Incident Date: | 6/27/2010 5:55:00 PM | Action: | Released-To Parent |
| Day of Week: | Sunday | Assigned To: | Frank Robinson |
| Stage: | Incident | Case Owner: | Jawad Al Khalloufi |
| Store | 00005 | Police Officer: | |
| Store Location: | 7770 E. MCDOWELL | Badge#: | |
| | SCOTTSDALE, AZ 85257 | Police Case #: | |
| Civil Recovery: | Yes | Police Called: | |
| Restitution: | No | Police Arrived: | |
| NRMA: | No | Police Left: | |
| Parent/Guardian: | Eduardo Jurado Gomez (480) 275-6643 | Police Charge: | |
| | | Time Released: | 6:40:00 PM |
| Parent/Guardian Acknowledgement: | | | |

## SUSPECT #1 INFORMATION (660-00005-10-SHOP-122)

| | | | |
|---|---|---|---|
| Last Name: | Gomez | Date of Birth: | 12/11/1995 |
| First Name: | Jessica | SSN | ••••• |
| Middle Initial: | | Sex: | Female |
| Address: | 7514 E Belliview st | Race: | |
| City/State/Zip | Scottsdale, AZ 85257 | Height/Weight: | ___ / 0 lbs |
| Country: | USA | Hair Color: | Black |
| Phone Number: | (480) 275-6643 | Eye Color: | Brown |
| Identification: | | Attire: | shirt &short jeans |
| ID Number: | | Adult/Juv: | Juvenile |
| ID State: | | Days worked weekly: | |
| Reason for Act: | she need it | # of Dependants: | |
| Hourly wage: | | Employer: | |
| Avg. Weekly Wage: | | Employer Phone: | (__) ___-___ |
| Hours worked weekly: | | | |

## INTERVIEW/ADMISSION

| | | | |
|---|---|---|---|
| Interview Start: | 6/27/2010 6:05:00 PM | Verbal Admt: | No |
| Interview End: | 6/27/2010 6:40:00 PM | Signed Acknowledgement | No |
| Source of Info: | Surveillance | Trespass Issued: | No |
| First Observed | 5:55:00 PM | Admission Amt: | $0.00 |
| First Observed Location: | Drug/GM | Incident Taped | No   Tape#/pos N/A |
| Anyone Injured: | No | Control Failure: | |
| LP Manager | JOSEPH KOPELIC | Citation: | |
| Handcuffs: | No | | |

## VIDEO/CCTV INFORMATION

Case #: 660-00005-10-SHOP-122  Shoplifting  System ID:756242                          Page 2 of 3

| | | | |
|---|---|---|---|
| Incident Taped | No | Statement Recorded: | No |
| CCTV Date/Time: | | DVR #: | |
| Camera #: | | Register #: | |
| CCTV System: | | Archive location: | |
| Tape#/pos | N/A | Actual time in archive: | |
| CCTV Comments: | | Length of footage: | |

## VIDEO REQUEST INFORMATION

| | | | |
|---|---|---|---|
| Date of Request: | | Response needed: | |
| Requesting Dept: | | Approx. incident time: | |
| Requestors Name: | | Victim/Complaintant: | |
| Requestors Phone: | | Review incident type: | |
| Email/sent to requestors: | No | Location of Theft | aisle 2 & restroom |

## MERCHANDISE

| Description | UPC | Department | Rec | Dam | Qty | Price | Total Price |
|---|---|---|---|---|---|---|---|
| DVD LOVE STINKS | 04339604554 | General | No | Yes | 1 | $7.99 | $7.99 |
| | | | | | | CASE TOTAL: | $7.99 |

Evidence Info:
Evidence Info:            Held In Store

## PERSON(S) INVOLVED

| Name | Address | Home Phone | Work Phone | Sex | DOB | Type | Witness Notes |
|---|---|---|---|---|---|---|---|
| Alkhalloufi, Jawad | | | (__) __-__ | | | | LPA AGENT |
| Florest, Jessica | | | (__) __-__ | Female | | | Assitance front end manager was present as witness when the subject was detained. |

## COURT

| Court Date | Court Room | Court Location | Subjects Plea | Penalty | Case Disposition |
|---|---|---|---|---|---|
| | | | | | |

## REPORT NARRATIVE

On 6/27/2010 Around 5:55:00 PM, I Jawad Al Khalloufi, observed a Female subject, later identified as Jessica Gomez and her friend Maria jurado. Gomez approach a display of of DVD'S. Gomez then selected one DVD total value $7.99 from the display rack. Gomez then proceeded to aisle #2 department along with her friend . Al Khalloufi observed Gomez concealing said merchandise in her purse in aisle #2.then went to the restroom were she open the DVD package and discarded the package in the trash can and keep the DVD in her purse. Al Khalloufi recovered the empty package from the restroom and placed in my hand.Alkhalloufi maintained continuous surveillance of Gomez as she passed all the available registers making no attempt to

Case #: 660-00005-10-SHOP-122  Shoplifting  System ID:756242                    Page 3 of 3

pay for the DVD that she concealed in her purse .Gomez saw LPA Alkhalloufi standing by the exit door holding the empty DVD package in my hand .Gomez get nervous and approached LPA Alkhalloufi at the exit door when she was leaving the store and open her purse and told LPA that she staled the DVD and apoligias.Alkhalloufi at this time I.D himself as LPA and asked Gomez to back in to the office to discuss the unpaid DVD that she concealed in her purse at which time she did ,upon arriving into the office a female witness assistance front end manager I.D Jessica Florest was present as witness. Gomez friend Maria Jurado was asked that she is free leave, but she want to stay with Gomez because they came together to the store.
Gomez parent were called her friend Maria Jurado later she went out side the store waiting for Gomez parent to give them direction.Gomez later was released to her father which he apologias to the store Mr Eduardo Jurado Gomez AZ I.D .D06410024 .
Gomez admitted that she always steal DVD's from store #5 and get away with it all the time.

Investigator Signature:_____          Date Signed:  ___/___/_____

LP Manager Signature: _____          Date Signed:  ___/___/_____

The STOP which I was Fined FoR:

They ACCUse me FoR detaining otha Person.

which it's not True. if you Read My Report:

 **ASSOCIATE CORRECTIVE ACTION**

COMPANY CORE VALUES: INTEGRITY, HONESTY, RESPECT, INCLUSION, DIVERSITY, SAFETY

**(Type in the gray fields, the boxes will automatically expand as you type.)**

Associate Name:  Jawad Al Khallouffi                     Date Submitted:  06-28-2010

SS Number:       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          Department:  887 Loss Prevention    Store#:  N/A

| TYPE OF INFRACTION: | |
|---|---|
| ☒ Violation of Company Policies or Procedures | ☐ Safety Violation |
| ☐ Misconduct | ☒ Poor Job Performance |
| ☒ Other (Describe briefly in gray box to the right) | Made detention without All elements |

**SUMMARIZE THIS INCIDENT:**
*This area will expand as you type.*

Jawad on 06-27-2010 you made a shoplift detention without ALL required elements. The suspect went into the women's restroom and you lost your continuous surveillance. In addition you detained an accomplice and /or a person not involved in the shoplift.

**ACTION TAKEN:**

☒ Suspension Pending Investigation

You are being suspended pending investigation regarding the allegations listed above. You are being afforded the opportunity to respond to these allegations by submission of a written statement that offers details to the incident. You are to return at the date and time listed below to meet with management for the results of this investigation.

You are **NOT AUTHORIZED** to work additional hours at **ANY** Fry's location while serving this suspension. Doing so may subject you to further Corrective Action up to and including separation.

Suspension dates: From   06-28-10   to   07-01-10

**All suspensions are to be faxed to Associate Relations immediately – (602) 442-9027**

Report to management at your facility on:   07-01-10   at   9:00AM
                                              **Date**          **Time**

**Associates signature acknowledges only that a copy of this notice has been received and read. It does not constitute agreement with the contents of this notice.**

Associate Signature:  _Jawad_                     Date:  6/28/2010

Supervisor Signature:  _Frank P. Bohm_            Date:  6/28/2010

Witness Signature:  _____                     Date:  6/28/2010

Original to Associate Store File          Copy to Associate          Copy to Keyfile

Revision Date: 03/17/2010



# NOTICE OF SEPARATION

**COMPANY CORE VALUES: INTEGRITY, HONESTY, RESPECT, INCLUSION, DIVERSITY, SAFETY**

*(Type in the gray fields, the boxes will automatically expand as you type.)*

Associate Name: Jawad Al Khalloufi          Hire Date  5/17/2010    Last Day Worked:  7-02-10

SS Number:  027-80-59.57          Current Rate of Pay: 15.00    Position: Loss Prevention    Store#:  887

## REASON FOR SEPARATION: (Check reasons below and give complete details in comment section)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ | 01 | Another job | ☐ | 12 | Length of hours | ☐ | 26 | Special separation |
| ☐ | 02 | Deceased | ☐ | 13 | Military enlistment | ☐ | 27 | Return to school |
| ☐ | 03 | Disliked type of work exceeded limit | ☐ | 14 | No reason given | ☐ | 28 | Unadjusted grievance/Grievance Resolution |
| ☐ | 04 | Dissatisfied with pay | ☐ | 16 | Quit without notice | ☐ | 29 | Work too difficult |
| ☐ | 05 | Failed to return from LOA | ☐ | 17 | Refused transfer (location) | ☐ | 30 | Failed to return from layoff |
| ☐ | 06 | Failed to return from MLA | ☐ | 20 | Resigned, conflict of hours | ☐ | 31 | Elected severance pay |
| ☐ | 07 | Family leaving area | ☐ | 21 | Retired disability (w/ benefits) | ☐ | 32 | Leave of absence exceeds limit |
| ☐ | 08 | Ill health | ☐ | 22 | Retired early (w/ benefits) | ☐ | 33 | Retired (deferred benefits) |
| ☐ | 09 | Imprisonment | ☐ | 23 | To go into business for self | ☐ | 36 | Transfer to another Div |
| ☐ | 10 | Inability to get along with supervisors and or associates | ☐ | 24 | Too far from home | ☐ | 37 | Never reported for work |
| ☐ | 11 | Lack of advancement | ☐ | 25 | To remain at home | ☐ | 38 | Job Abandonment-NC/NS |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ | 40 | Retired ineligible for benefits | ☐ | 50 | Insubordination | ☐ | 61 | Unsatisfactory accident record |
| ☐ | 41 | Charging incorrect prices | ☐ | 51 | Inventory shortages | ☐ | 62 | Unsatisfactory gross profit |
| ☐ | 42 | Discourtesy to customers | ☐ | 52 | Job eliminated | ☒ | 63 | Unsatisfactory quality of work |
| ☐ | 43 | Dishonesty (confessed or proven) | ☐ | 53 | Mishandling Company funds | ☐ | 64 | Unsatisfactory quantity of work |
| ☐ | 44 | Drunkenness | ☐ | 54 | Permanent layoff | ☒ | 65 | Violation of store rules |
| ☐ | 45 | End of temporary job | ☐ | 55 | Physically incapable for job | ☐ | 66 | Total & permanent disability |
| ☐ | 46 | Excessive absences/tardiness | ☐ | 56 | Poor sales volume | ☐ | 67 | Retired Trustee Plan |
| ☐ | 47 | Excessive losses or damages | ☐ | 57 | Poor store conditions | ☐ | 68 | Terminated during probation period |
| ☐ | 48 | Falsification of records | ☐ | 59 | Retired normal w/ benefits | ☐ | 70 | Failed Drug Screen Test |
| ☐ | 49 | Forced resignation or refused demotion (lack ability) | ☐ | 60 | Serious deviation (social) | ☐ | 77 | Failed Electronic Employment Verification (EEV) |

**VOLUNTARY QUIT:** How many days notice was given? _____    **DISCHARGED:** Yes ☒    No ☐

Would you re-employ? Yes ☐  No ☒    (give reasons in comment section below):

Comments: Associate failed to follow LP Shoplifting Detainment Policy.

Associate Signature: _____    Date: 7/3/2010

Signature and Title of Person completing form: _____    Date: 7/2/2010

Witness Signature: _____    Date: 7-2-2010

## OFFICE USE ONLY

Signed _____

Separation Pay: _____  Wks. Authorized: _____    Date: _____

Vacation due not taken: _____    Store Manager or Supervisor: _____

Signed _____    Amount vacation paid: _____

                                        Date: _____

Original to Associate Store File          Copy to Associate          Copy to Keyfile

JAWAD AlKHALLOUF, Appeal U-1220542-001
Judge KAY S. Silverman.                    9-24-2010  10. Am.

## OFFICE OF THE ATTORNEY GENERAL
### Civil Rights Division

# NOTICE OF RIGHT TO SUE

Alkahalloufi Jawad              VS.              Fry's Food and Drug
(Charging Party)                                  (Respondent)

CRD No.: _____              EEOC No.: 540-2010-03004

On July 06, 2010, you filed a charge with the Civil Rights Division alleging employment discrimination. Arizona law provides that you may bring a civil action in Superior court of the county where the alleged discriminatory action took place. Should you decide to file a civil action, you must do so **within 90 days** of the date you receive this Notice or **within one year** of the date you filed the charge, **whichever comes first**. A.R.S. ☐ 41-1481(D.)

This NOTICE OF RIGHT TO SUE is being issued for the following reason(s):

☐    This office has made a final determination or has otherwise completed its processing of your charge and will be taking no further action.

☐    The Civil Rights Division has not completed the processing of your charges, but there are approximately 90 days left before the expiration of the **one year deadline** for filing a civil action in Superior Court.

☐    Although your charge was sent to the Equal Employment Opportunity Commission for processing, you may also have a right to sue under the Arizona Civil Rights Act, and there are approximately 90 days left before the expiration of the **one year deadline** for filing a civil action in Superior Court.

☒    Charging Party has submitted a written request.

If you have any questions concerning this notice, please contact (520) 628-6500. If you need legal assistance, you should seek the advice of an attorney.

Sincerely,

Diana Varela, Chief Counsel
Compliance Section, Civil Rights Division

BY:

_Ernest Granillo, Compliance Manager_

Sent by regular mail this 3rd day of September, 2010

cc: Fry's Food and Drug (Respondent)

I was ~~neet~~ in good health BeFoRe :

when I was Fined FoR my Job unFairly.

Ceause me Sush Pain and Siness

which cause me Hight level of colesterol 227
sup-se To be 37

infection kind of Uclcess Because I was

Siness,

Also I'm mot eatig night like I used Too

I cancel my Gym membe Because I can't Affond

To Pay.

This situation cost me my health: lo/

Alkhalloufi, Jawad (MR # 0038527909)                                    Encounter Date: 09/22/2010



**Alkhalloufi, Jawad**                    Location: **SOUTH CENTRAL**          Description: **Male DOB: 8/2/1967**
                                                  **FHC**
**9/22/2010   Office Visit**              Dept Phone: **602-344-6400**
                                                                                  Provider: **Shaghayegh Abdollahi,**
**MRN: 0038527909**                                                               **MD**

Allergies as of 9/22/2010
  No Known Allergies
Your To Do List (Lista de las cosas que tiene que hacer)
  **AMB REFERRAL TO PODIATRY [REF90 Custom]**
Instructions (Instrucciones)
  None
You Were Diagnosed With (A usted lo/la diagnosticaron con)
  Helicobacter Pylori Infection  [041.86]
  Hyperlipidemia  [272.4]
  Calcaneal Spur  [726.73]

Medications and Orders (Medicamentos y ordenes)

Start Taking (Comience a tomar)
  **amoxicillin-clarithromycin-lansoprazole 500-** Take  by mouth 2 times daily. Follow package directions.
  **500-30 mg combo pack**
  **simvastatin 10 mg tablet**                    Take 1 Tab by mouth every evening.
Your Current Medications Are (Sus medicamentos actuales son)

|                                                      | Refills | Start     | End        |
|------------------------------------------------------|---------|-----------|------------|
| **amoxicillin-clarithromycin-lansoprazole 500-** 500-30 mg combo pack | 0       | 9/22/2010 | 10/22/2010 |
|   Sig - Route:  Take  by mouth 2 times daily. Follow package directions. - Oral | | | |
| **simvastatin 10 mg tablet**                         | 6       | 9/22/2010 | 9/22/2011  |
|   Sig - Route:  Take 1 Tab by mouth every evening. - Oral | | | |

We Performed the Following
  **AMB REFERRAL TO PODIATRY [REF90 Custom]**

Visit Disposition (Disposicion de visita)
  Disposition
  Return in about 6 weeks (around 11/3/2010) for lipids.

Preferred Pharmacy
  MIHS PHARMACY- SO. CENTRAL - PHOENIX, AZ - 33 W. TAMARISK

Referral Information

| Referral ID | Referred By | Referred To |
|-------------|-------------|-------------|
| 102918      | ABDOLLAHI, SHAGHAYEGH CHC PODIATRY | |
|             | 2525 E. Roosevelt St. | |

Alkhalloufi, Jawad (MR # 0038527909) This document                      Page 1 of 2
contains confidential information about your health and care.
It is provided directly to you for your personal, private use
only.

## Consumer Medical Information

| | | | |
|---|---|---|---|
| Patient Name | ALKHALLOUFI, JAWAD | Prescriber | ABDOLLAHI, SHAGHAYEGI |
| Drug Prescribed | SIMVASTATIN 10MG TAB | Date Printed | 09/22/2010 |
| Generic Name | SIMVASTATIN TAB 10 MG | | |

### WHY IS IT PRESCRIBED?

For the treatment of disorders of lipid metabolism (to lower elevated cholesterol levels).

### BEFORE USING THIS MEDICINE:

**Tell your doctor:**

If you are PREGNANT; If you are BREAST FEEDING.

**Tell your doctor if you are having any of the following conditions:**

KIDNEY DISEASE; LIVER PROBLEMS.

### HOW MEDICINE IS ADMINISTERED?

Use this medicine exactly as directed on the label, unless instructed differently by your doctor
* Take with or without food in the evening.
* A reduced-calorie DIET and increased physical activity are usually part of the treatment regimen. Follow prescribed diet and exercise programs.
* Regular testing of LIVER FUNCTION, including liver enzyme levels in blood, is essential.

### WHAT TO DO IF YOU MISS A DOSE?

Take when remembered unless time for next dose. No double doses.

### HOW THIS MEDICINE SHOULD BE STORED?

Keep in original closed container in a dark, cool, and dry place away from children. Discard unneeded medicine.

### WARNINGS/PRECAUTIONS:

* STOP TAKING  MEDICINE & GET EMERGENCY HELP IMMEDIATELY IF A HYPERSENSITIVITY OR ANAPHYLACTIC REACTION occurs: (see symptoms below):-
* shortness of breath, fast or irregular breathing, fever, joint pain, fast pulse, lightheadedness or fainting, swelling of face, hives, & itching.
* Avoid taking large quantities (>1 quart) of grapefruit juice while on this medication.
* This medicine is CONTRAINDICATED for use during pregnancy. CALL YOUR DOCTOR IMMEDIATELY IF PREGNANT or intend to become pregnant.
* The results of some MEDICAL or LAB tests may be affected by this medicine. Inform the doctor in charge that you are taking this medicine.
* Strictly limit alcohol consumption. LIVER PROBLEMS may be more likely to occur if you drink alcoholic beverages regularly while taking this medicine.
* Notify doctor of any signs suggesting LIVER problems (eg, unusual fatigue, loss of appetite, nausea, vomiting, yellowing of eyes, dark urine).
* Because of INTERACTIONS, report the use of any other prescription or nonprescription medicines, including natural/herbal remedies, to your doctor.
* This medicine may cause increased sensitivity to the sun. You should AVOID prolonged or excessive exposure to direct and/or artificial sunlight.

* Notify MD if prolonged tiredness, muscle/joint ache especially if accompanied by malaise & fever.
* DO NOT take this medication if you are pregnant or intend to become pregnant.
* Nursing mothers should be advised not to breastfeed.

### ADVERSE REACTIONS:

**Stop taking this medicine and get emergency help IMMEDIATELY if you experience:**

Shortness of breath, fast or irregular breathing, fever, joint pain, fast pulse, lightheadedness or fainting, swelling of face, hives, & itching.

**Stop taking this medicine and notify your doctor AS SOON AS POSSIBLE if you experience:**

Muscle pain; Muscle weakness.

**Other Common Side Effects:**

Headache; Stomach discomfort or pain; Gas; Diarrhea; Constipation; Indigestion; Nausea; Vomiting.

If symptoms are mild but do not go away or are bothersome, check with your doctor. IF ANY OF THE ABOVE SIDE EFFECTS IS SEVERE, CALL YOUR DOCTOR IMMEDIATELY.

Call your doctor for medical advice about side effects. You may report side effects to FDA at 1-800-FDA-1088.

### Taking this medication may cause the following mineral depletion:

UBIQUINONE ORAL (COENZYME Q10).

This leaflet has been developed by CliniDATA Source, Inc. based primarily on labeling information provided by the manufacturer. The information does not cover all possible uses, actions, precautions, side effects, or interactions of this medicine. It is not intended as medical advice for individual patients.

Copyright © CliniDATA Source, Inc. 09/10. All rights reserved

## Consumer Medical Information

| | |
|---|---|
| *Patient Name* | ALKHALLOUFI, JAWAD |
| *Drug Prescribed* | PREVACID 30MG CER |
| *Generic Name* | LANSOPRAZOLE E.C. CAP CR 30 MG |

| | |
|---|---|
| *Prescriber* | ABDOLLAHI, SHAGHAYEGI |
| *Date Printed* | 09/22/2010 |

### WHY IS IT PRESCRIBED?
For stomach & intestinal ulcers, stomach acid reflux disease (GERD), and Erosive Esophagitis.

### BEFORE USING THIS MEDICINE:
**Tell your doctor if you are having any of the following conditions:**
LIVER PROBLEMS.

### HOW MEDICINE IS ADMINISTERED?
Use this medicine exactly as directed on the label, unless instructed differently by your doctor
* Take this medicine BEFORE MEALS.
* Swallow CAPSULES whole, DO NOT chew or break.
* If you have problem swallowing, capsules can be opened and the granules inside can be sprinkled on applesauce and swallowed (not chewed) immediately.
* Take ANTACIDS as needed for pain relief, but not within 30 minutes of taking this medicine.
* Use this medicine for the full prescribed treatment period.
* PACKET:MIX PACKET only with water. Stir one packet with two tablespoons of water. Drink right away.

### WHAT TO DO IF YOU MISS A DOSE?
Take when remembered unless time for next dose. No double doses.

### HOW THIS MEDICINE SHOULD BE STORED?
Keep in original closed container in a dark, cool, and dry place away from children. Discard unneeded medicine.

### WARNINGS/PRECAUTIONS:
* There are no adequate or well-controlled safety studies in pregnant women. NOTIFY YOUR DOCTOR IF PREGNANT or intend to become pregnant.
* NOTIFY YOUR DOCTOR AS SOON AS POSSIBLE IF YOU FEEL ANY MALAISE, FATIGUE, OR DARK DISCOLORATION OF THE URINE.
* Because of INTERACTIONS, report the use of any other prescription or nonprescription medicines, including natural/herbal remedies, to your doctor.

### Other Common Side Effects:
Diarrhea; Stomach discomfort or pain; Headache; Nausea; Dizziness.

If symptoms are mild but do not go away or are bothersome, check with your doctor. IF ANY OF THE ABOVE SIDE EFFECTS IS SEVERE, CALL YOUR DOCTOR IMMEDIATELY.

Call your doctor for medical advice about side effects. You may report side effects to FDA at 1-800-FDA-1088.

### Taking this medication may cause the following mineral depletion:
VITAMIN B12 ORAL.

This leaflet has been developed by CliniDATA Source, Inc.

based primarily on labeling information provided by the manufacturer. The information does not cover all possible uses, actions, precautions, side effects, or interactions of this medicine. It is not intended as medical advice for individual patients.

Copyright © CliniDATA Source, Inc. 09/10. All rights reserved

## Consumer Medical Information

| | | | |
|---|---|---|---|
| Patient Name | ALKHALLOUFI, JAWAD | Prescriber | ABDOLLAHI, SHAGHAYEGI |
| Drug Prescribed | CLARITHROMYCIN 500MG TAB | Date Printed | 09/22/2010 |
| Generic Name | CLARITHROMYCIN TAB 500 MG | | |

### WHY IS IT PRESCRIBED?
Used to eliminate bacteria that causes infections.

### BEFORE USING THIS MEDICINE:
Tell your doctor if you are having any of the following conditions:
LIVER PROBLEMS; KIDNEY DISEASE.

### HOW MEDICINE IS ADMINISTERED?
Use this medicine exactly as directed on the label, unless instructed differently by your doctor
* Use this medicine for the full prescribed treatment period.
* This medicine should be taken WITH a full glass of water (6-8oz).
* DO NOT REFRIGERATE SUSPENSION
* SHAKE suspension well before using.
* This medicine can be taken with or without food, REGARDLESS of meal times. If stomach upset occurs, take with food.
* Swallow whole, DO NOT chew or break tablets.

### WHAT TO DO IF YOU MISS A DOSE?
Take when remembered unless time for next dose. No double doses.

### HOW THIS MEDICINE SHOULD BE STORED?
Keep in tightly-closed, light-resistant container at room temperature (15-30°C), away from moisture. Do not refrigerate.

### WARNINGS/PRECAUTIONS:
* STOP TAKING  MEDICINE & GET EMERGENCY HELP IMMEDIATELY IF A HYPERSENSITIVITY OR ANAPHYLACTIC REACTION occurs: (see symptoms below):-
* shortness of breath, fast or irregular breathing, fever, joint pain, fast pulse, lightheadedness or fainting, swelling of face, hives, & itching.
* Safety of use during pregnancy has not been established. This medicine SHOULD NOT BE USED DURING PREGNANCY unless benefit justifies potential risk to the fetus. CALL YOUR DOCTOR.
* To prevent drug resistance, this medication should be used to treat BACTERIAL INFECTIONS ONLY. It is not effective against viral infections.
* AVOID GRAPEFRUIT while taking this medicine.
* If DIARRHEA develops/persists and is severe or lasts more than 2 or 3 days, call your doctor.

### ADVERSE REACTIONS:
Stop taking this medicine and get emergency help IMMEDIATELY if you experience:
Severe allergic reaction.

Stop taking this medicine and notify your doctor AS SOON AS POSSIBLE if you experience:
Hearing loss, ear ringing, unsteadiness.

### Other Common Side Effects:
Stomach discomfort or pain; Decreased appetite; Nausea; Vomiting; Diarrhea; Change in taste; Skin rash; Headache.

If symptoms are mild but do not go away or are bothersome, check with your doctor. IF ANY OF THE ABOVE SIDE EFFECTS IS SEVERE, CALL YOUR DOCTOR IMMEDIATELY.

Call your doctor for medical advice about side effects. You may report side effects to FDA at 1-800-FDA-1088.

### Taking this medication may cause the following mineral depletion:
BIOTIN FORTE; INOSITOL ORAL; VITAMIN B1 ORAL (THIAMINE); VITAMIN B2 ORAL(RIBOFLAVIN); VITAMIN B3 ORAL (NICOTINAMIDE); VITAMIN B6 ORAL (PYRIDOXINE); VITAMIN B12 ORAL; VITAMIN K.

This leaflet has been developed by CliniDATA Source, Inc. based primarily on labeling information provided by the manufacturer. The information does not cover all possible uses, actions, precautions, side effects, or interactions of this medicine. It is not intended as medical advice for individual patients.

Copyright © CliniDATA Source, Inc. 09/10. All rights reserved

# LPA Jawad Alkhalloufi statement

## Al Khalloufi, Jawad

**Sent:** Tuesday, March 30, 2010 6:42 PM

**To:** Tremoulis, Pete; CN=Frank Robinson/OU=OPS/OU=FRYS/O=KrogerCo (frank.robinson@frysfood.com); Joe Kopelic (joe.kopelic@frysfood.com)

---

To Whom it May Concern:

It has been brought to my attention that Eric McCourby, the LP supervisor from Zone 1 has been spreading malicious gossip about me. Store 126 misses me working at their store and when they heard the hurtful things that Eric McCourby has been saying about me they(specifically the GM manager, and Ast. Store Manager) told another LP agent so that he could inform me. Apparently Mr. McCourby has been calling me a "candy bar stopper," and minimizing my efforts to reduce theft in my stores. He tells people that although I stop a lot of shoplifters in the store, I am just stopping people that are stealing small things with $1.00 value, and it is not true. I feel that this kind of torment will hurt my reputation in other stores and I will not be taken seriously. This could also expose me to situations where my safety could be jeopardized. It is very offensive and hurtful to find out that a person of respect is degrading me and my job the way he is. I am not sure if my heritage or nationality is playing a role in his comments. I would hate to think that my Nationality is overshadowing my performance as a Loss Prevention Agent. I feel that this situation is hindering my performance, now that I know how little this supervisor thinks of me. I would like the malicious gossip to stop, and I prefer to not have to work under his supervision in the future.
I thank you for your time ad assistance
Sincerely.

Jawad Alkhalloufi
Fry's loss prevention Agent
Tel.480-650-8758

## Al Khalloufi, Jawad

**To:** Kopelic, Joseph
**Subject:** Personal issue

Joe,

I have recently been advised by other LP Agents that Eric McCourby has been making comments regarding my job performance. I spoke with you last week regarding this issue. He is belittling my work habits and making comments that I feel demean me. I would like your assistance in resolving this issue, as I feel embarrassed by being called a "candy bar" stopper. I am not comfortable working under these accusations. I would appreciate your assistance in bringing this up to HR and helping me make sure all the correct steps are followed so this may be resolved. I thank you for your time and assistance.

Thank you,

Jawad Alkhalloufi

ON 6/17/2010

They suspend me with no Poly.

The Policy say we can not chunch The shoplist

BAg JUST The Police can.

The Policy say Also if The subject Refuse.

To stop let him go.

I Follow The Policy I stop The subject at The Exit

Asking him To Give me buck The items I Let

him go. AFter he Refuse To Give me his bag.

To Avoid Fight. or Un saFe situation.

AFter They review The DVR The supension. They

Dismissed The Case. Because They are wrong

I was Right.

That show That They were After me.

They Been Loking For any small mistake

To Fined me.



# ASSOCIATE CORRECTIVE ACTION

**COMPANY CORE VALUES: INTEGRITY, HONESTY, RESPECT, INCLUSION, DIVERSITY, SAFETY**

**(Type in the gray fields, the boxes will automatically expand as you type.)**

Associate Name: Jawad Al Khalloufi                     Date Submitted: 06-17-2010

SS Number: 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          Department: 887 Loss Prevention          Store#: N/A

| TYPE OF INFRACTION: | |
|---|---|
| ☐ Violation of Company Policies or Procedures | ☐ Safety Violation |
| ☐ Misconduct | ☒ Poor Job Performance |
| ☒ Other (Describe briefly in gray box to the right) | Failure to fully investigate on shoplift detention, resulting in loss of merchandise and creating a unproductive stop incident. |

### SUMMARIZE THIS INCIDENT:
**This area will expand as you type.**

On 05-03-2010 Jawad stopped a suspected shoplifter, but failed to check all of the suspected shoplifters bags resulting in a loss of merchandise and creating a unproductive detention.

| ACTION TAKEN: | |
|---|---|
| ☐ 1st Corrective Action | ☐ Suspension Pending Investigation |
| ☐ Corrective Action Suspension | ☐ Demotion |

**If Corrective Action Suspension or Suspension Pending Investigation is issued then the following applies:**

You are **NOT AUTHORIZED** to work additional hours at **ANY** Fry's location while serving this suspension. Doing so may subject you to further Corrective Action up to and including separation.

Suspension dates: From _____ to _____

**All suspensions are to be faxed to Associate Relations immediately – (602) 442-9027**

Report to management at your facility on: _____ at _____
                                               **Date**          **Time**

**Associates signature acknowledges only that a copy of this notice has been received and read. It does not constitute agreement with the contents of this notice.**

Associate Signature: _Jawad_          Date: 6 | 17 | 2010

Supervisor Signature: _____          Date: _____

Witness Signature: _____          Date: _____

Original to Associate Store File          Copy to Associate          Copy to Keyfile

Revision Date: 02/02/2010



*Return To Work!*

# INVESTIGATION CLOSURE

**COMPANY CORE VALUES: INTEGRITY, HONESTY, RESPECT, INCLUSION, DIVERSITY, SAFETY**

**(Type in the gray fields, the boxes will automatically expand as you type.)**

Date:        06-17-2010

To:          Juwad Al Khalloufi

SS Number:   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

Store #:     887 Loss Prevention

Re:          **Investigation Closure Letter**

You were recently issued a 'Notice of an Investigation'.  The Company has investigated all allegations thoroughly. If you believe that any information relevant to the investigation has not been provided, please furnish it promptly. Appropriate action will be taken based on the results of the investigation.

Associate Signature: _____    Date: 6|17|2010

Supervisor Signature: _____   Date: _____

Witness Signature: _____      Date: _____

Original to Associate Store File            Copy to Associate            Copy to Keyfile

AGut KANen did BAd STOP and mo
Action was Takeing :

Case #: 660-00062-10-SHOP-47  Shoplifting  System ID:740292                    Page 1 of 3

# INCIDENT REPORT ☒

## INCIDENT INFORMATION

| | | | |
|---|---|---|---|
| Case Number: | 660-00062-10-SHOP-47 | Total Case Value: | $29.99 |
| Incident Type | Shoplifting | Method of Operation | Not Concealed |
| Incident Date: | 5/10/2010 3:55:00 PM | Action: | Arrested |
| Day of Week: | Monday | Assigned To: | Jefferson Evans |
| Stage: | Case | Case Owner: | Karen Rogers |
| Store | 00062 | Police Officer: | LENTINE |
| Store Location: | 554 WEST BASELINE ROAD | Badge#: | 17374 |
| | MESA, AZ 85210 | Police Case #: | 2010-1300753 |
| Civil Recovery: | No | Police Called: | |
| Restitution: | No | Police Arrived: | |
| NRMA: | No | Police Left: | |
| Parent/Guardian | (__) ___-____ | Police Charge: | SHOPLIFT |
| Parent/Guardian Acknowledgement: | | Time Released: | 4:45:00 PM |

## SUSPECT #1 INFORMATION (660-00062-10-SHOP-47)

| | | | |
|---|---|---|---|
| Last Name: | HITCHOCK JR | Date of Birth: | 7/31/1965 |
| First Name: | REXFORD | SSN | *****3712 |
| Middle Initial: | F | Sex: | Male |
| Address: | 538 E. COLEMEN | Race: | White |
| City/State/Zip | MESA, AZ 85210 | Height/Weight: | 5'10 / 200 lbs |
| Country: | USA | Hair Color: | Brown |
| Phone Number: | (602) 809-7251 | Eye Color: | Brown |
| Identification: | Drivers License | Attire: | RED SHIRT, TAN SHORTS |
| ID Number: | *******8771 | Adult/Juv: | Adult |
| ID State: | AZ | Days worked weekly: | |
| Hourly wage: | | # of Dependants: | |
| Avg. Weekly Wage: | | Employer: | |
| Hours worked weekly: | | Employer Phone: | (__) ___-____ |

## INTERVIEW/ADMISSION

| | | | |
|---|---|---|---|
| Interview Start: | 5/10/2010 | Verbal Admt: | No |
| Interview End: | 5/10/2010 4:40:00 PM | Signed | |
| Source of Info: | SECURITAS | Acknowledgement | No |
| First Observed | 12:00:00 AM | Trespass Issued: | Yes |
| First Observed Location: | Electronics | Admission Amt: | $0.00 |
| | | Incident Taped | No   Tape#/pos N/A |
| Anyone Injured: | No | Control Failure: | |
| LP Manager | JOSEPH KOPELIC | Citation: | |
| Handcuffs: | No | | |

## VIDEO/CCTV INFORMATION

| | | | |
|---|---|---|---|
| Incident Taped | No | Statement Recorded: | No |
| CCTV Date/Time: | | DVR #: | |

Case #: 660-00062-10-SHOP-47  Shoplifting  System ID:740292                    Page 2 of 3

| | | | |
|---|---|---|---|
| Camera #: | | Register #: | |
| CCTV System: | | Archive location: | |
| Tape#/pos | N/A | Actual time in archive: | |
| CCTV Comments: | | Length of footage: | |

## VIDEO REQUEST INFORMATION

| | | | |
|---|---|---|---|
| Date of Request: | | Response needed: | |
| Requesting Dept: | | Approx. incident time: | |
| Requestors Name: | | Victim/Complainant: | |
| Requestors Phone: | | Review incident type: | |
| Email/sent to requestors: | No | Location of Theft | GROCERY AISLE |

## MERCHANDISE

| Description | UPC | Department | Rec | Dam | Qty | Price | Total Price |
|---|---|---|---|---|---|---|---|
| ENERGIZER BATTERIES | | | Yes | Yes | 1 | $29.99 | $29.99 |
| | | | | | | CASE TOTAL: | $29.99 |

**Evidence Info:**

| | |
|---|---|
| Evidence Info: | Held In Store |

## PERSON(S) INVOLVED

| Name | Address | Home Phone | Work Phone | Sex | DOB | Type | Witness Notes |
|---|---|---|---|---|---|---|---|
| RIVERA, RYAN | | | (__) __-__ | | | Witness | |

## COURT

| Court Date | Court Room | Court Location | Subjects Plea | Penalty | Case Disposition |
|---|---|---|---|---|---|
| | | | | | |

## REPORT NARRATIVE

On May 10, 2010 Ryan Rivera LPS and I observed who was walter I.D. as Rexford Frerick Hitchock Jr. and another male walk into the Pharmacy area where I had observed subject select a battery charger from the display and walk down the aisle where I had observed him conceal the charger down the front of his pants. Subject then went into the mens restroom where Ryan had followed subject into the restroom and heard subject take the battery charger out of the package and then exited subject exited the restroom where subject then walked quickly to the front of the store where Ryan had told me that he had the empty package. Subject exited the store where I had stopped subject and I.D. myself where I stated I needed our merchandise back where subject stated he left it back in the store. We had asked subject to come back into the store and show us where it was. After we were in the store close to the Office subject shoved me and started to take off running where Ryan stopped subject and detained him and then M.P.D. was called. Subject then was taken into the Office where I had asked him why he was shoplifting and subject stated "times are hard", not knowing that after he had left the restroom subject had threw the battery charger on an end cap of a aisle before he had exited the store. Subject was booked into jail for assault.

Investigator Signature:_____        Date Signed: ____/____/_____

Case #: 660-00062-10-SHOP-47  Shoplifting  System ID:740292                    Page 3 of 3

**LP Manager Signature:** _____        **Date Signed:** ____/____/_____

BAD STOP. No Action was Taking.

AGent Nathan and AGent shane STOP

laDDAY and ACCUse her For shoPlisE

The Female she PaYed For her waler.

AGent Nathan and AGent shane cover UP.

Also Joe koPelic The manager loss PRevation

and Demis Grains coVer UP. and (Frank Robison.
supevison?

No Action was Taking:

The same dAY we Just Sigm Policy about.

BAD STOP.

The Policy APPLY To scame No To others:

The Female back To STore Asking For confonate

office   The Assistance STore manager Give her

$10.00 To calm her down:

This is Neal BAD STOP.

Case #: 660-00005-10-RECO-1  RCO - Reasonable Cause Only  System ID:751142          Page 1 of 3

 Back to Menu     Logoff    / More Forms     Print

## INCIDENT REPORT  ☒

## INCIDENT INFORMATION

| | | | |
|---|---|---|---|
| Case Number: | 660-00005-10-RECO-1 | Total Case Value: | $0.00 |
| Incident Type | RCO - Reasonable Cause Only | Method of Operation | Bascart |
| Incident Date: | 6/10/2010 4:30:00 PM | Action: | Information Only |
| Day of Week: | Thursday | Assigned To: | DENNIS JERIN |
| Stage: | Case | Case Owner: | Nathan Pepper |
| Store | 00005 | Police Officer: | |
| Store Location: | 7770 E. MCDOWELL | Badge#: | |
| | SCOTTSDALE, AZ 85257 | Police Case #: | |
| Civil Recovery: | No | Police Called: | |
| Restitution: | No | Police Arrived: | |
| NRMA: | No | Police Left: | |
| Parent/Guardian: | ( ) __-_ | Police Charge: | |
| Parent/Guardian Acknowledgement: | _____ | Time Released: | |

## SUSPECT #1 INFORMATION (660-00005-10-RECO-1)

| | | | |
|---|---|---|---|
| Last Name: | Unknown | Date of Birth: | 1/1/1960 |
| First Name: | Female | SSN | |
| Middle Initial: | | Sex: | Female |
| Address: | | Race: | Hispanic |
| City/State/Zip | | Height/Weight: | ___ / 0 lbs |
| Country | USA | Hair Color: | |
| Phone Number: | | Eye Color: | |
| Identification: | | Attire | |
| ID Number: | | Adult/Juv: | Adult |
| ID State: | | Days worked weekly: | |
| Hourly wage: | | # of Dependants: | |
| Avg. Weekly Wage: | | Employer: | |
| Hours worked weekly: | | Employer Phone: | ( ) |



## INTERVIEW/ADMISSION

| | | | |
|---|---|---|---|
| Interview Start: | 6/10/2010 | Verbal Admt: | No |
| Interview End: | 6/10/2010 | Signed | |
| Source of Info: | Surveillance | Acknowledgement | No |
| First Observed | 4:30:00 PM | Trespass Issued: | No |
| First Observed Location: | Grocery | Admission Amt: | $0.00 |
| | | Incident Taped | No   Tape#/pos N/A |
| Anyone Injured: | No | Control Failure: | |
| LP Manager | DENNIS JERIN | | |
| Handcuffs: | No | Citation: | |

## VIDEO/CCTV INFORMATION

Case #: 660-00005-10-RECO-1  RCO - Reasonable Cause Only  System ID:751142        Page 2 of 3

| | | | | |
|---|---|---|---|---|
| Incident Taped | No | | Statement Recorded: | No |
| CCTV Date/Time: | | | DVR #: | |
| Camera #: | | | Register #: | |
| CCTV System: | | | Archive location: | |
| Tape#/pos | N/A | | Actual time in archive: | |
| CCTV Comments: | | | Length of footage: | |

## VIDEO REQUEST INFORMATION

| | | | |
|---|---|---|---|
| Date of Request: | | Response needed: | |
| Requesting Dept: | | Approx. incident time: | |
| Requestors Name: | | Victim/Complaintant: | |
| Requestors Phone: | | Review incident type: | |
| Email/sent to requestors: | No | Location of Theft | |

## MERCHANDISE

| Description | UPC | Department | Rec | Dam | Qty | Price | Total Price |
|---|---|---|---|---|---|---|---|
| | | | | | | CASE TOTAL: | $0.00 |

Evidence Info:
Evidence Info:

## PERSON(S) INVOLVED

| Name | Address | Home Phone | Work Phone | Sex | DOB | Type | Witness Notified |
|---|---|---|---|---|---|---|---|
| Pepper, Nathan | | | (602) 12-9088 | Male | | | Loss Prevention |

## COURT

| Court Date | Court Room | Court Location | Subjects Plea | Penalty | Case Disposition |
|---|---|---|---|---|---|
| | | | | | |

## REPORT NARRATIVE

At Fry's #5, 7770 E. McDowell Rd., on 6-10-2010 at 4:30pm, LPA Nathan Pepper observed an unknown female doing a refund at the Customer Service desk, after having been in the store for about ten minutes. After completing the refund, the unknown female then continued to shop. The unknown female selected several grocery items while she shopped, including a case of Aquafina water, which she put on the bottom of her shopping cart. The unknown female then made her way to the front of the store, and entered the self-checkout area. Here, the unknown female proceeded to pay for some items that she had selected while shopping in three separate transactions. Throughout all of these transactions, the unknown female did not scan the case of water, and the Self-checkout attendant did not come over to the case of water and physically scan it either. After the unknown female paid for her items, she proceeded to exit the store through the South exit doors.

At 5:00pm, Pepper approached the unknown female and identified himself as Fry's security. The unknown female was then asked to return to the store to discuss the water that she had forgotten to pay for. The unknown female then stated that she had paid for the water. As she walked back into the store, the Self-checkout attendant said that he had scanned the water for her, using a UPC that he had at the Self-checkout pedestal. Pepper then apologized to the unknown female, and the unknown

female left the store without incident. NFI
--
Nathan Pepper 04/11/1986
5305 W. Buckeye Rd.
Phoenix, AZ 85043
Loss Prevention Department

**Investigator Signature:**_____          **Date Signed:** ____/____/_____

**LP Manager Signature:** _____          **Date Signed:** ____/____/_____



Bad shop.

ACent KARen ~~Eone~~ STOP The subject
Female shoplift According To The policy
You Can not grap or Touch The subject
and she did   The supervisor and manager
They did nothing Across Nage KAnen
AFte The last meeting/ The Policy say no grap
on Touch.

se #: 660-00062-10-SHOP-53  Shoplifting  System ID:751494                    Page 1 of 3

## INCIDENT REPORT

## INCIDENT INFORMATION

| | | | |
|---|---|---|---|
| Case Number: | 660-00062-10-SHOP-53 | Total Case Value: | $24.96 |
| Incident Type | Shoplifting | Method of Operation | Purse |
| Incident Date: | 6/14/2010 | Action: | Arrested |
| Day of Week: | Monday | Assigned To: | Jefferson Evans |
| Stage: | Case | Case Owner: | Karen Rogers |
| Store | 00062 | Police Officer: | FIGUEROA |
| Store Location: | 554 WEST BASELINE ROAD | Badge#: | 12942 |
| | MESA, AZ 85210 | Police Case #: | 20101650478 |
| Civil Recovery: | Yes | Police Called: | 12:55:00 PM |
| Restitution: | No | Police Arrived: | |
| NRMA: | No | Police Left: | |
| Other Suspects Involved: | XANTHOUDAKIS, MARK (660-00062-10-SHOP-54) | Police Charge: | |
| Parent/Guardian: | (___) ___-____ | Time Released: | |
| Parent/Guardian Acknowledgement: | | | |

## SUSPECT #1 INFORMATION (660-00062-10-SHOP-53)

| | | | |
|---|---|---|---|
| Last Name: | ALDRICH | Date of Birth: | 9/15/1983 |
| First Name: | ANGELA | SSN | *****5916 |
| Middle Initial: | | Sex: | Female |
| Address: | 554 W. BASLINE RD | Race: | Hispanic |
| City/State/Zip | MESA, AZ 85207 | Height/Weight: | 5'6 / 160 lbs |
| Country: | USA | Hair Color: | Brown |
| Phone Number: | (___) ___-____ | Eye Color: | Brown |
| Identification: | Drivers License | Attire: | white top blue jean shorts |
| ID Number: | *******9162 | Adult/Juv: | Adult |
| ID State: | AZ | Days worked weekly: | |
| Hourly wage: | | # of Dependants: | |
| Avg. Weekly Wage: | | Employer: | |
| Hours worked weekly: | | Employer Phone: | (___) ___-____ |

## INTERVIEW/ADMISSION

| | | | |
|---|---|---|---|
| Interview Start: | 6/14/2010 | Verbal Admt: | No |
| Interview End: | 6/14/2010 | Signed Acknowledgement | No |
| Source of Info: | Surveillance | Trespass Issued: | No |
| First Observed | 12:50:00 PM | Admission Amt: | $0.00 |
| First Observed Location: | General | Incident Taped | No    Tape#/pos N/A |
| Anyone Injured: | No | Control Failure: | |
| LP Manager | Jefferson Evans | Citation: | |
| Handcuffs: | No | | |

## VIDEO/CCTV INFORMATION

Case #: 660-00062-10-SHOP-53  Shoplifting  System ID:751494                    Page 2 of 2

| | | | |
|---|---|---|---|
| Incident Taped | No | Statement Recorded: | No |
| CCTV Date/Time: | | DVR #: | |
| Camera #: | | Register #: | |
| CCTV System: | | Archive location: | |
| Tape#/pos | N/A | Actual time in archive: | |
| CCTV Comments: | | Length of footage: | |

## VIDEO REQUEST INFORMATION

| | | | |
|---|---|---|---|
| Date of Request: | | Response needed: | |
| Requesting Dept: | | Approx. incident time: | |
| Requestors Name: | | Victim/Complaintant: | |
| Requestors Phone: | | Review Incident type: | |
| Email/sent to requestors: | No | Location of Theft | JUICE AISLE |

## MERCHANDISE

| Description | UPC | Department | Rec | Dam | Qty | Price | Total Price |
|---|---|---|---|---|---|---|---|
| krger alkaline batteries aa | | General | Yes | No | 2 | $6.99 | $13.98 |
| kroger alkaline aaa batteries | | General | Yes | No | 1 | $4.69 | $4.69 |
| kroger 100 per cent coffee | | Grocery | Yes | No | 1 | $6.29 | $6.29 |
| | | | | | | CASE TOTAL: | $24.96 |

### Evidence Info:

| | |
|---|---|
| Evidence Info: | Taken By Police |
| Officer Name: | FIGUEROA |
| Badge #: | |

## COURT

| Court Date | Court Room | Court Location | Subjects Plea | Penalty | Case Disposition |
|---|---|---|---|---|---|
| | | | | | |

## REPORT NARRATIVE

On June 14, 2010 I had observed a H/F enter where the Batteries where I had observed she had a large black purse hanging off her shoulder. I had observed subject select three packages of batteries. Subject then walks over to the juice aisle where I had observed her select a bottle of juice and then I had observed her set all the stuff on a shelf and exited the store where I waited for a few seconds where I then observed her come in with a H/M and they both walked down the juice aisle where I then observed the male put the batteries and something else into the purse which was later I.D. as a can off coffee. Male subject then puts the purse on his shoulder where they both exited the store and the door alarm went off. Robert Redden Assist. Manger was already out side asking for the two step back in. The male then throws the purse at Robert where Robert then hands me the purse where I had my hand wrapped up in the strap when the female comes and tries to pull it away from me. The females yells at the male to come and help her where the male comes back to where I had seen the male reaching into his right front pocket and that is when I had observed him pull out a knife where I was now trying to pull my hand out of the straps of the purse when the male came towards me with the knife and cut the straps where my hand was free from the purse and the female took off running and M.P.D. was called. I had feared that I was going to be stabbed when the male came at me with the knife. Both subject was caught by M.P.D. and the merchandise was taken by the Police.

Investigator Signature:_____          Date Signed: ____/____/____

Case #: 660-00062-10-SHOP-53  Shoplifting  System ID:751494                          Page 3 of 3

**LP Manager Signature:** _____          **Date Signed:** ____/____/_____

AGent Gregony madeBad STOP:
and he was suspended: Because he is mon man Religion:
But AGent KAREn roger: and AGent Nathan Peffer:
and AGent Shane livingstone.
They were Never suspended on any Action
was Taking AGains Them:
They sTOP Costumes and They Accuse Then
For stealing That BAD sTOP Realy
and AGAist Policy To Accuse some one.
They cover The sTOPs. The office:
Mn Jerei Denis and Joe kopolic. The policy.
APPly To some No To others:

Case #: 660-00084-10-RECO-1  RCO - Reasonable Cause Only  System ID:753168          Page 1 of 3

# INCIDENT REPORT                                          ☒

## INCIDENT INFORMATION

| | | | |
|---|---|---|---|
| Case Number: | 660-00084-10-RECO-1 | Total Case Value: | $10.99 |
| Incident Type | RCO - Reasonable Cause Only | Method of Operation | Purse |
| Incident Date: | 6/16/2010 7:34:00 PM | Action: | Information Only |
| Day of Week: | Wednesday | Assigned To: | Jefferson Evans |
| Stage: | Incident | Case Owner: | Gregory Powell |
| Store | 00084 | Police Officer: | |
| Store Location: | 542 E. HUNT HWY. | Badge#: | |
| | QUEEN CREEK, AZ 851435212 | Police Case #: | |
| Civil Recovery: | No | Police Called: | |
| Restitution: | No | Police Arrived: | |
| NRMA: | No | Police Left: | |
| Parent/Guardian: | (__) __-___ | Police Charge: | |
| Parent/Guardian Acknowledgement: | _____ | Time Released: | |

## SUSPECT #1 INFORMATION (660-00084-10-RECO-1)

| | | | |
|---|---|---|---|
| Last Name: | Unknown | Date of Birth: | |
| First Name: | Female | SSN | |
| Middle Initial: | | Sex: | |
| Address: | | Race: | |
| City/State/Zip | , AR | Height/Weight: | / 0 lbs |
| Country: | USA | Hair Color: | |
| Phone Number: | (__) __-___ | Eye Color: | |
| Identification: | | Identifying Feature: | Facial Paircings |
| ID Number: | | Attire: | Purple Top, Short shorts |
| ID State: | | Adult/Juv: | Juvenile |
| Hourly wage: | | Days worked weekly: | |
| Avg. Weekly Wage: | | # of Dependants: | |
| Hours worked weekly: | | Employer: | |
| | | Employer Phone: | (__) __-___ |

## INTERVIEW/ADMISSION

| | | | |
|---|---|---|---|
| Interview Start: | 6/16/2010 7:36:00 PM | Verbal Admt: | No |
| Interview End: | 6/16/2010 7:36:00 PM | Signed Acknowledgement | No |
| Source of Info: | Surveillance | Trespass Issued: | No |
| First Observed | 7:34:00 PM | Admission Amt: | $0.00 |
| First Observed Location: | Grocery | Incident Taped | No    Tape#/pos N/A |
| Anyone Injured: | No | Control Failure: | |
| LP Manager | JOSEPH KOPELIC | Citation: | |
| Handcuffs: | No | | |

## VIDEO/CCTV INFORMATION

| | | | |
|---|---|---|---|
| Incident Taped | No | Statement Recorded: | No |

Case #: 660-00084-10-RECO-1  RCO - Reasonable Cause Only  System ID:753168                Page 2 of 3

| | | | |
|---|---|---|---|
| CCTV Date/Time: | | DVR #: | |
| Camera #: | | Register #: | |
| CCTV System: | | Archive location: | |
| Tape#/pos | N/A | Actual time in archive: | |
| CCTV Comments: | | Length of footage: | |

## VIDEO REQUEST INFORMATION

| | | | |
|---|---|---|---|
| Date of Request: | | Response needed: | |
| Requesting Dept: | | Approx. Incident time: | |
| Requestors Name: | | Victim/Complainant: | |
| Requestors Phone: | | Review Incident type: | |
| Email/sent to requestors: | No | Location of Theft | |

## MERCHANDISE

| Description | UPC | Department | Rec | Dam | Qty | Price | Total Price |
|---|---|---|---|---|---|---|---|
| New amsterdam Gin | 08500001431 | Grocery | Yes | No | 1 | $10.99 | $10.99 |
| | | | | | | CASE TOTAL: | $10.99 |

**Evidence Info:**

| | |
|---|---|
| Evidence Info: | Returned to Stock |
| RTS Date: | 6/18/2010 |
| Associate Receiving: | Greg Powell |

## PERSON(S) INVOLVED

| Name | Address | Home Phone | Work Phone | Sex | DOB | Type | Witness Notes |
|---|---|---|---|---|---|---|---|
| Powell, Greg | | | ( ) _-_ | | | | |
| Evans, Jeff | | | ( ) _-_ | | | | I called and discussed the stop with Jeff after the incident. |

## COURT

| Court Date | Court Room | Court Location | Subjects Plea | Penalty | Case Disposition |
|---|---|---|---|---|---|
| | | | | | |

## REPORT NARRATIVE

On June 16, 2010 at Frys Food and Drug #84 at 7:34 PM (times differ slightly on Dedicated Micros), I LPA Greg Powell, observed from the balcony two teenage females, both approximately 14 or 15 years old, approach the front of store liquor end cap. One of the female subjects selected from that display a bottle of New Amsterdam Gin. As she grabbed the bottle I heard the loud sound of glass hitting glass. The two females split up on the front aisle near aisle 13, Pet care. The one female went towards snack city, I am unsure where she went and what she did. I watched as the female with the liquor turned onto aisle 13.

Case #: 660-00084-10-RECO-1  RCO - Reasonable Cause Only  System ID:753168          Page 3 of 3

There she opened her purse and concealed the bottle of New Amsterdam Gin. I watched as she moved off the aisle towards the exit doors. I waited until she was walking in front of the Promotion aisle to run down the stairs. I felt like I maintained proper surveillance. The subject walked swiftly through U-Scan holding her purse against her side. I stopped her about 5 feet outside the exit door. I stopped her and identified myself as Frys security and asked her to join me inside to discuss a matter. Her response was Why? I dont have anything!. I asked where is the bottle of liquor? At this time she opening her purse to prove that there was not a bottle of Liquor or anything else in it and shrugged. I told her to have a nice day then returned to the store. As I reentered I noted that the other female was exiting the store. I went to the dog food aisle knowing that there was no where she could have removed the bottle once she left the aisle. I found the bottle of New Amsterdam Gin sitting on the shelf in the middle of dog treat bags right where she concealed the merchandise. I was 100 % sure of my elements. I ran through them in my head before I made the stop. The only things I can think of is I either missed some movement when she removed the bottle or when she opened her purse to conceal she went right next to it and set it on the shelf, my angle from up stairs could have caused the misinterpret of the placement of the bottle. I called DLPS Jeff Evans at 7:37 PM shortly after finding the bottle to inform of the situation. He did not answer so I left a message for him to call me as soon as her could. He returned my phone call at 7:43 PM at which time we discussed the situation.

DVR does not have coverage of the front aisle of liquor or the dog food aisle. The footage that does have the subject in it was burned along with neighboring areas.

113- 19:53:31 - Two female subjects enter the store.
206- 19:35:48 - The two are behind U-Scan making their way to the Liquor end cap.
108- 19:36:32 - I exit the stair well.
206- 19:36:34 - The Female subject cut through U-Scan.
114- 19:36:49 - The subject exits the store followed closely by me.
114- 19:37:00 - I reenter the store.
114- 19:37:18 - The other female subject exits the store.

Investigator Signature:_____        Date Signed: _____/_____/_____

LP Manager Signature: _____        Date Signed: _____/_____/_____

Bad stop No Action was Taking.

A Gent NAthen Pepper stop The subject shoplise
in Gent corral Beyon 20 Feet it's AGains Policy
The shoplise male slapped AGent Nathen in his
ears he want To store 2l FoR DRug Test
By himself.

A Gent Nathen he Never Reported on call The supavison
Because he did hide his Action.

The supenvisoR MR FRAnk did not Take any Action
Agains AGent NathenPeppe, in The Policy when you get
To Fight with shoplise need To Be Reviewed By
The supavison.

The Policy Apply To some not To other ?

Case #: 660-00005-10-SHOP-115  Shoplifting  System ID:743444                Page 1 of 3



| Back to Menu | Logoff | More Forms | Print |

## INCIDENT REPORT ☒

## INCIDENT INFORMATION

| | | | |
|---|---|---|---|
| Case Number: | 660-00005-10-SHOP-115 | Total Case Value: | $310.97 |
| Incident Type | Shoplifting | Method of Operation | Purse |
| Incident Date: | 5/20/2010 8:05:00 PM | Action: | Arrested |
| Day of Week: | Thursday | Assigned To: | Frank Robinson |
| Stage: | Case | Case Owner: | Nathan Pepper |
| Store | 00005 | Police Officer: | Williams |
| Store Location: | 7770 E. MCDOWELL | Badge#: | 1307 |
| | SCOTTSDALE, AZ 85257 | Police Case #: | 10-12531 |
| Civil Recovery: | Yes | Police Called: | 8:40:00 PM |
| Restitution: | No | Police Arrived: | 8:45:00 PM |
| NRMA: | No | Police Left: | 10:30:00 PM |
| Parent/Guardian: | (__) ___-____ | Police Charge: | Shoplifting // Assault |
| Parent/Guardian Acknowledgement: | | Time Released: | 8:40:00 PM |

## SUSPECT #1 INFORMATION (660-00005-10-SHOP-115)

| | | | |
|---|---|---|---|
| Last Name: | Langford | Date of Birth: | 7/14/1986 |
| First Name: | Whitney | SSN | ***** |
| Middle Initial: | | Sex: | Female |
| Address: | | Race: | White |
| City/State/Zip | | Height/Weight: | 5'9 / 115 lbs |
| Country: | USA | Hair Color: | |
| Phone Number: | (__) ___-____ | Eye Color: | |
| Identification: | | Attire: | Blue Top, Jean Shorts |
| ID Number: | | Adult/Juv: | Adult |
| ID State: | | Days worked weekly: | |
| Hourly wage: | | # of Dependants: | |
| Avg. Weekly Wage: | | Employer: | |
| Hours worked weekly: | | Employer Phone: | (__) ___-____ |

## INTERVIEW/ADMISSION

| | | | |
|---|---|---|---|
| Interview Start: | 5/20/2010 | Verbal Admt: | No |
| Interview End: | 5/20/2010 | Signed Acknowledgement | No |
| Source of Info: | Surveillance | Trespass Issued: | No |
| First Observed | 8:05:00 PM | Admission Amt: | $0.00 |
| First Observed Location: | Grocery | Incident Taped | No   Tape#/pos N/A |
| Anyone Injured: | No | Control Failure: | Wide Opening Not Attended |
| LP Manager | Frank Robinson | Citation: | |
| Handcuffs: | No | | |

## VIDEO/CCTV INFORMATION

Case #: 660-00005-10-SHOP-115  Shoplifting  System ID:743444          Page 2 of 3

| Incident Taped | No | | Statement Recorded: | No |
|---|---|---|---|---|
| CCTV Date/Time: | | | DVR #: | |
| Camera #: | | | Register #: | |
| CCTV System: | | | Archive location: | |
| Tape#/pos | N/A | | Actual time in archive: | |
| CCTV Comments: | | | Length of footage: | |

## VIDEO REQUEST INFORMATION

| Date of Request: | | | Response needed: | |
|---|---|---|---|---|
| Requesting Dept: | | | Approx. incident time: | |
| Requestors Name: | | | Victim/Complaintant: | |
| Requestors Phone: | | | Review incident type: | |
| Email/sent to requestors: | No | | Location of Theft | Exit Doors |

## MERCHANDISE

| Description | UPC | Department | Rec | Dam | Qty | Price | Total Price |
|---|---|---|---|---|---|---|---|
| Cover Girl Make-up | | Drug/GM | Yes | No | 1 | $7.59 | $7.59 |
| Maybelline Make-up | | Drug/GM | Yes | No | 1 | $9.29 | $9.29 |
| Misc. Grocery Items | | Grocery | Yes | No | 1 | $294.09 | $294.09 |
| | | | | | | CASE TOTAL: | $310.97 |

Evidence Info:

| Evidence Info: | Returned to Stock |
|---|---|
| RTS Date: | 5/19/2010 |
| Associate Receiving: | Nathan Pepper |

## PERSON(S) INVOLVED

| Name | Address | Home Phone | Work Phone | Sex | DOB | Type | Witness Notes |
|---|---|---|---|---|---|---|---|
| Pepper, Nathan | | | (602) 442-9088 | Male | | | Loss Prevention |

## COURT

| Court Date | Court Room | Court Location | Subjects Plea | Penalty | Case Disposition |
|---|---|---|---|---|---|
| | | | | | |

## REPORT NARRATIVE

Due to the number of individuals involved in this shoplifting incident, all subject's will be listed as follows-

S1-Whitney Langford
S2-Unknown male
S3-Megan Smith
S4-Max Deangelis

At Fry's #5, 7770 E. McDowell Rd., on 5-19-2010 at 8:05pm, LPA Nathan Pepper observed S1 and S2 in the pet food aisle. S1 was pushing a shopping cart, with a large black purse in the top portion, and multiple grocery items in the main portion. S1 was then observed concealing items that she had in the top portion of the cart into her purse, while S2 attempted to block for her. After concealing, S3 and S4 then came into the pet food aisle. S2 then exited the aisle, and returned moments later with some grocery items that he placed into the main portion of the shopping cart. S1, S2, S3, and S4 then exited the aisle and separated, leaving S1 and S3 with the shopping cart. S1 and S3 then entered the cosmetics aisle. Here, S3 pointed at some cosmetic items on the shelf, while S1 selected them. In this aisle, S1 selected all of the listed cosmetic and toothbrush items and placed them on top of her purse. S1 and S3 then exited the aisle and entered the pet food aisle. Here, S1 concealed those items into her purse as S3 watched. S2 continued to bring various grocery items back to the shopping cart and place them into the main portion of the shopping cart. S4 then met up with S1 and S3 at the end of the pet food aisle. All three then exited the aisle and stood on the front aisle, near the registers. At this time, S1 selected a Red Bull from a cooler near a register and placed it on top of her purse. S1 then re-entered the pet food aisle. Here, S1 dug around in her purse and removed two packages from her purse, eventually discarding those packages on a nearby shelf. Once S1 exited the aisle, Pepper checked the packages and noticed that the packages were empty, and had been selected and concealed by S1 earlier. S1 then met up with S2, while S3 and S4 exited the store. S1 and S2 then entered the seasonal section. Here, S1 pushed the shopping cart into a split in the aisle and began to reach into the main portion of the shopping cart while S2 stood as a lookout. Minutes later, Pepper could see that the grocery items that were in the main portion of the shopping cart were now in plastic Fry's bags. After concealing, S1 and S2 then exited the seasonal section and approached the customer service desk. Here, S2 looked at an item at the customer service desk while S1 stood near the shopping cart. Both then proceeded to exit the store through the South exit doors without making any attempt to pay for the concealed items.

At 8:40pm, Pepper approached S1 and S2 and identified himself as Fry's security. S1 and S2 were then asked to return to the store to discuss the items that they had failed to pay for. S1 then attempted to grab her purse, at which time Pepper took hold of S1's wrist. S2 then asked what Pepper was talking about. At this time, Pepper attempted to grab S2's wrist, however S2 pulled away and began to back into the parking lot. At this time, Pepper attempted to detain S2, however, he became aggressive and struggled with Pepper. Pepper then took S2 to the ground, however, the subject got up and ran into the parking lot. Pepper then contacted Scottsdale Police Department as S2 got into a car that contained three other people. Scottsdale PD was given the last known direction of travel for the vehicle, and Pepper returned to the store.

At 8:45pm, Scottsdale Police Officer Williams #1307 arrived on scene to discuss the incident with Pepper. During this time, Scottsdale PD apprehended the vehicle and detained the subjects, however, S2 was no longer in the vehicle. Pepper then verified that the subject's being detained were involved in the shoplifting incident. S1, S3, and S4 were prosecuted. All merchandise was recovered. NFI

Nathan Pepper 04/11/1986
5305 W. Buckeye Rd.
Phoenix, AZ 85043
Loss Prevention Department

Investigator Signature:_____    Date Signed: ____/____/_____

LP Manager Signature: _____    Date Signed: ____/____/_____

BAd sTop.

A Cent Noth en Repla sTop subject shoPlifc

Be yon 20 feet which Agains policy

No Action was Tuking Agains The Acent,

Violiation AGAinst policy. DUR was Tope if

You need.

Case #: 660-00005-10-SHOP-120  Shoplifting  System ID:753605                    Page 1 of 3

# INCIDENT REPORT

## INCIDENT INFORMATION

| | | | |
|---|---|---|---|
| Case Number: | 660-00005-10-SHOP-120 | Total Case Value: | $36.97 |
| Incident Type | Shoplifting | Method of Operation | On Person |
| Incident Date: | 6/19/2010 6:40:00 PM | Action: | Arrested |
| Day of Week: | Saturday | Assigned To: | Nathan Pepper |
| Stage: | Case | Case Owner: | Nathan Pepper |
| Store | 00005 | Police Officer: | Burkmier |
| Store Location: | 7770 E. MCDOWELL | Badge#: | 889 |
| | SCOTTSDALE, AZ 85257 | Police Case #: | 10-15231 |
| Civil Recovery: | No | Police Called: | 7:00:00 PM |
| Restitution: | No | Police Arrived: | 7:05:00 PM |
| NRMA: | No | Police Left: | 7:30:00 PM |
| Parent/Guardian: | (__) __-___ | Police Charge: | Shoplifting |
| Parent/Guardian Acknowledgement: | | Time Released: | |

## SUSPECT #1 INFORMATION (660-00005-10-SHOP-120)

| | | | |
|---|---|---|---|
| Last Name: | Unknown | Date of Birth: | |
| First Name: | Male | SSN | ***** ____ |
| Middle Initial: | | Sex: | Male |
| Address: | | Race: | White |
| City/State/Zip | | Height/Weight: | 5'10 / 150 lbs |
| Country: | USA | Hair Color: | |
| Phone Number: | (__) __-___ | Eye Color: | |
| Identification: | (None) | Identifying Feature: | Multiple Arm tattoos |
| ID Number: | | Attire: | White and Red Jersey, Blk Sweatpants |
| ID State: | | | |
| Hourly wage: | | Adult/Juv: | Adult |
| Avg. Weekly Wage: | | Days worked weekly: | |
| Hours worked weekly: | | # of Dependants: | |
| | | Employer: | |
| | | Employer Phone: | (__) __-___ |

## INTERVIEW/ADMISSION

| | | | |
|---|---|---|---|
| Interview Start: | 6/19/2010 | Verbal Admt: | No |
| Interview End: | 6/19/2010 | Signed Acknowledgement | No |
| Source of Info: | Surveillance | Trespass Issued: | No |
| First Observed | 6:40:00 PM | Admission Amt: | $0.00 |
| First Observed Location: | Drug/GM | Incident Taped | No   Tape#/pos N/A |
| Anyone Injured: | No | Control Failure: | |
| LP Manager | Frank Robinson | Citation: | |
| Handcuffs: | No | | |

## VIDEO/CCTV INFORMATION

Case #: 660-00005-10-SHOP-120  Shoplifting  System ID:753605                    Page 2 of 3

| | | | |
|---|---|---|---|
| Incident Taped | No | Statement Recorded: | No |
| CCTV Date/Time: | | DVR #: | |
| Camera #: | | Register #: | |
| CCTV System: | | Archive location: | |
| Tape#/pos | N/A | Actual time in archive: | |
| CCTV Comments: | | Length of footage: | |

## VIDEO REQUEST INFORMATION

| | | | |
|---|---|---|---|
| Date of Request: | | Response needed: | |
| Requesting Dept: | | Approx. incident time: | |
| Requestors Name: | | Victim/Complaintant: | |
| Requestors Phone: | | Review incident type: | |
| Email/sent to requestors: | No | Location of Theft | Exit Doors |

## MERCHANDISE

| Description | UPC | Department | Rec | Dam | Qty | Price | Total Price |
|---|---|---|---|---|---|---|---|
| Dane-Elec USB | | Electronics | Yes | No | 1 | $11.99 | $11.99 |
| Biore Skin Preservation | | Drug/GM | Yes | No | 1 | $13.99 | $13.99 |
| Biore Deep Cleansing Pore Strips | | Drug/GM | Yes | No | 1 | $10.99 | $10.99 |
| | | | | | | CASE TOTAL: | $36.97 |

Evidence Info:

Evidence Info:          Held In Store

## PERSON(S) INVOLVED

| Name | Address | Home Phone | Work Phone | Sex | DOB | Type | Witness Notes |
|---|---|---|---|---|---|---|---|
| Pepper, Nathan | | | (602) 442-9086 | Male | | | Loss Prevention |

## COURT

| Court Date | Court Room | Court Location | Subjects Plea | Penalty | Case Disposition |
|---|---|---|---|---|---|
| | | | | | |

## REPORT NARRATIVE

At Fry's #5, 7770 E. McDowell Rd., on 6-19-2010 at 6:40pm, LPA Nathan Pepper observed the listed subject in the Drug/GM Department, carrying a handbasket. The subject walked through one aisle and entered the cosmetics aisle. At this time, Pepper walked by the subject an noticed that the subject already had one unknown item in the handbasket that was EAS tagged. The subject was then observed selecting the listed Biore items and placing them into the handbasket as well. As the subject exited the aisle, he removed something from his pocket and began to tear at a package that was in his handbasket. The subject then entered the school supplies aisle and selected the listed USB item. The subject then hid the item under the bottom shelf and began to tear at that package as well. The subject then put the USB into his handbasket and exited the aisle. The subject then continued to walk around the store, stopping at various aisles to conceal the items that he had selected. After concealing all of the selected merchandise, the subject entered the Soda aisle, left his empty handbasket on a nearby shelf, and proceeded to

Case #: 660-00005-10-SHOP-120  Shoplifting  System ID:753605                Page 3 of 3

exit the store through the South exit doors without making any attempt to pay for the concealed items.

At 7:00pm, Pepper approached the listed subject and identified himself as Fry's security. The subject was then asked to step back into the store to discuss the items that had been taken. The subject looked at Pepper, smiled, and kept walking into the parking lot. At this time, Pepper contacted Scottsdale PD to give them a description of the subject, and the last known direction of travel. The subject fled on foot and did not enter a vehicle.

At 7:05pm, Scottsdale Police Officer Burkmier #889 arrived on scene to take the report. The subject was then apprehended and some of the merchandise was recovered from the subject. The subject was arrested by Scottsdale PD. NFI

Nathan Pepper 04/11/1986
5305 W. Buckeye Rd.
Phoenix, AZ 85043
Loss Prevention Department


Investigator Signature:_____          Date Signed: ____/____/_____

LP Manager Signature: _____.          Date Signed: ____/____/_____

NoThig in writig about BATHnoom STOP:
I sTop The subject AFTe she Passed
All The ReGisTens with The DVD in hea Punse.
she opea her punse and Give me The item
and Admilled To shoplise: see: The Policy
    Please:

Fry's
Loss Prevention
Agent Manual
11/11/05



# Fry's Loss Prevention Agent Manual

## I. Company Policies/Programs

### A. Dress Code
1. Agents must sign and adhere to the dress code outlined in the LP Dress Code Policy.

### B. Job Performance
1. As an Agent of the Loss Prevention Department, you are expected to be productive in the overall functions of your job.

### C. Overtime
2. All overtime must be approved by the ZLPS.
   a) Approvable overtime: Catching a shoplifter and it requires you to stay past your scheduled time; the ZLPS has you working on a special project and has instructed you to stay beyond your scheduled time.

### D. Meal Periods/Breaks
3. All Agents will take a 30-minute lunch for shifts over 6 hours.
   a) No breaks or lunches can be taken in the Monitor Room.
4. Schedules will need to reflect lunchtime in the overall shift for the day.

### E. Use of Company Equipment
5. Any misuse of Fry's equipment, to include CCTV, will result in immediate disciplinary action up to and/or including termination.

### F. Personal Belongings
   i. All personal belonging must be kept out of the work area.
   ii. Prior to leaving the store, a greeter or manager store must check all personal belongings of employees.

### b. Attendance/Scheduling/Tardiness
   i. Tardiness: An employee is tardy if he/she is not at their assigned work area at his/her scheduled time:
   1. Step 1:Tardies 1 through 4 will be logged by the supervisor, discussed with the employee and both the supervisor and the employee will sign the log at that time.
   2. Step 2:The fifth (5) tardy within one year will result in a written verbal warning.
   3. Step 3:The sixth (6) tardy within a year will result in a written warning.
   4. Step 4:The seventh (7) tardy within a year will result in a suspension of 60% of the hours an employee is scheduled for that week.
   5. Step 5:The eighth (8) tardy within a year will result in a recommendation for termination. Termination is subject to review by top management prior to final determination.

ii. Absenteeism is an absence from regularly scheduled work due to circumstances not covered by the following: paid vacation, paid holiday, approved funeral leave, military leave, and jury duty. Thus, failing to report to work on a scheduled day, reporting more than 90 minutes after scheduled start time, or leaving more than 90 minutes before the scheduled end of one's shift will count as an absence occurrence.

Consecutive days of absence, if due to a single cause, will count as one occurrence. However, if such consecutive days of absence exceeds three (3) days, each day of absence in excess of three days will count as a separate occurrence unless the absence is due to an industrial injury, or the employee has obtained an approved leave of absence or the employee, upon return to work presents a certificate from a licensed physician certifying the period of time the employee was unable to work, the nature of the illness or injury and full release is presented upon the employee's return to work, each consecutive day of the absence beyond the first three (3) days will count as separate occurrence.

A false statement by an employee concerning his absence will be grounds for discharge.

An employee who is absent will receive the following discipline:

1. Step 1:Absence occurrence 1 through 4 will be logged by the supervisor, discussed with the employee and both the supervisor and the employee will initial the log upon the employees return to work.
2. Step 2:The fifth (5) occurrence within a year will result in a written verbal warning.
3. Step 3:The sixth (6) occurrence within a year will result in a written warning.
4. Step 4:The seventh (7) occurrence within a year will result in a suspension of 60% of the hours an employee is scheduled for that week.
5. Step5: The eighth (8) occurrence within a year will result in termination from employment.

In the case of absence, the employee must contact his supervisor within ½ hour of his scheduled start time. A message from other than the employee will only be accepted when the employee is hospitalized or seriously ill. Communication must be made daily when the employee misses scheduled work except when the employee is out on leave of absence or out due to an industrial accident. Each failure to provide proper notification will result in progressive disciplinary action up to and including termination.

iii. No Call/No Show

1. No call/no show is when an employee neither reports to work nor calls his supervisor by the end of his/her scheduled shift. Employees who have no call/no shows will receive the following discipline:
2. Step 1:The first no call/no show will result in a suspension of 60% of the hours an employee is scheduled for that week.
3. Step 2:A second no call/no show within a year will result in an involuntary resignation of employment.

iv. Requesting time off
1. All time off request must be sent to the ZLPS in writing at least two weeks prior to request.
2. ZLPS will contact agent to confirm the approval or denial of the request.

c. **Shopping on the Clock**
i. Agents are not allowed to shop on the clock.

d. **Use of Profanity**
i. The use of profanity in the work place will result in disciplinary action up to and/or including termination.

e. **Use of Intoxicating Beverages/Drugs**
i. Employees are subject to discipline up to and including immediate discharge for engaging in the following conduct:
1. Using, possessing, selling, trafficking in or trading illegal drugs on or off duty while on Company property, including Company owned or leased vehicles. This will apply while conducting business on behalf of the Company, or while participating in any Company sponsored event.
2. Reporting for work, remaining on duty, or being on Company property under the influence of drugs or alcohol.
3. Abusing prescription drugs that may adversely affect an employee's work performance, the employee's safety or the safety of others; or failing to inform management of the use of prescribed medication that may have such an effect.
4. Testing positive for drugs or alcohol, refusing to cooperate with, refusing to submit to an alcohol and/or drug test, or engaging in conduct to obstruct or subvert such a test.
5. Being convicted of a drug related crime.

f. **Smoking Policy**
i. Smoking can only be done in authorized smoking areas of the store.

Version Date 11/11/05

 g. **Personal Conduct (On/Off Duty)**
   i. Agents will conduct themselves in a professional manner both on and off duty.  Unprofessional conduct will result in disciplinary action up to and/or termination.

 h. **Understocking**
   i. Understocking (employee placing merchandise outside the view of the customer, with the purpose of purchasing it for themselves at a later time), is a violation of Company policy.

 i. **Carry Weapons/Handcuffs**
   i. Weapons/Handcuffs are not allowed to be used by an agent. The use of weapons/handcuffs will result in disciplinary action up to and/or including termination.

 j. **Evaluations/Areas Evaluated**
   i. Evaluations will be completed on each agent on a yearly basis by the ZLPS and the evaluation will be based on the agents overall ability.
   ii. Areas to be evaluated:
    1. Daily productivity
    2. Detentions
    3. Special Projects
    4. CCTV
    5. Communication
    6. Rapport with operations

 k. **Probationary Period**
   i. All agents will be on a 90-day probationary period.

 l. **Risk Control Orientation Guidelines**
   i. Any physical contact with a suspect, must be reported to your supervisor immediately.
   ii. Any injuries sustained by the agent or the subject during a detention must have all proper risk management forms completed at that time.
   iii. Any agent that sustains an injury must complete a drug/alcohol test according to Company guidelines.

 m. **Telephone Usage**
   i. Use of the telephones in the store must be Company use, unless there is a personal emergency.
   ii. Cell phones need to be limited to emergency personal calls.

 n. **Gossip/Horseplay**
   i. Malicious gossip/derogatory comments and horseplay will not be tolerated while on the clock or on the property.
    1. Communicating in a way other than what is factual is considered malicious gossip or derogatory comments and is not accepted in Loss Prevention.  It can result in disciplinary action up to and/or including termination.

Version Date 11/11/05

        2. Horseplay can result in disciplinary action up to and/or including termination.

o. **Dealing with News Media**

    i. Agents are not to give statements to the media other than no comment. Agents will refer all media items to Fry's Community Relations Department.

p. **Expense Control**

    i. ZLPS/Regional must authorize all expenses except expense reports.

        1. Agents will complete an Expense Report within 2 weeks of the week they are requesting to be paid.

        2. Expense reports are for mileage between stores, and other approved expenses.

q. **Controls**

    i. Agents are to help in the review of basic general controls in the store. (Any issues potentially endangering life or property must be addressed immediately: See it; Fix it; Check it)

        1. Unused checkouts blocked off
        2. Perimeter of store clean and clear of debris
        3. Propane cages locked
        4. "Floor Sweep/Inspection Log"
        5. No unauthorized chemicals
        6. Compactor locked
        7. 18" clearance for all sprinklers
        8. Emergency procedures in place
        9. Roof hatch locked
        10. Doors controlled/secured properly
        11. No understocking
        12. EAS logs being filled out properly
        13. Greeter in place at scheduled times

r. **Emergency Exits**

    i. All emergency exits clean, unblocked, and checked on monthly basis.

s. **DSD Procedures/Back Door Controls**

    i. All receiving must enter through the backdoors.
    ii. Backdoors can never be left open or unattended.
    iii. Allow a maximum of three vendors in the backroom.
    iv. Samples or free products are not to be accepted.
    v. All vendor packages (boxes, displays, etc.) must be checked before the vendor leaves.

# G. Documentation

    a. **Detention Forms**

      i.  Detention form must be filled out at the time of the detention. All paperwork must be completed prior to returning to the sales floor.

**b. Statement of Facts**
      i.  Statement of facts must contain the Four (4) Elements.
      ii.  Statement of facts must include only the facts pertaining to the incident.

**c. Criminal Trespass Form**
      i.  Trespass forms must be completed on all detained individuals, whether charges are filed or not.

**d. Local Law Enforcement Paperwork**
      i.  Agents must make themselves familiar with any local law enforcement paperwork that needs to be completed prior to the authorities arriving at the location (merchant agreements, etc...).

**e. Files**
      i.  Files for detentions must always be kept for easy access and with documentation that will cause the agent to remember the specifics of the detention.

**f. Weekly/Monthly Collectibles**
      i.  Weekly/Monthly Collectibles will be given to the ZLPS for their specific district.

**g. Cleanliness/Safety of LP Office**
      i.  The LP Office/Monitor Room must ALWAYS be neat, clean and in order. It is the agent's responsibility as well as managements to keep the room clean and organized.

## H. Detentions

**a. Four Element of an Detention**
      i.  Element 1:Seeing selection of the merchandise.
      ii.  Element 2:Concealment of the merchandise.
      iii.  Element 3:Maintaining eye contact.
      iv.  Element 4:Allowing individual to pass all points of sale.

**b. Recognizing Potential Shoplifters**
      i.  Hands on training with a current LP Agent Trainer/ZLPS.

**c. Observation Points**
      i.  Hands on training with a current LP Agent Trainer/ZLPS.

**d. Describing/Identifying Subjects**
      i.  Agents must always be able to give detail description of anyone they have had to deal with during a shoplifting detention or an investigation.

**e. Theft Techniques/Methods/Devices**
      i.  Hands on training with current LP Agent Trainer/ZLPS.

**f. Accomplices/Partners**

   i. We do not detain accomplices or partners, unless they actually participate with the concealment, or taking merchandise beyond the last point of sale.

g. **Approaching/Questioning on Sales Floor**
   i. We do not make contact with individuals on the sales floor. The only contact is to be made when the individual goes beyond the last point of sale.

h. **Use of Force**
   i. If the detention develops into a dangerous/combative situation, all efforts to detain the suspect(s) must stop.
   ii. Reasonable force may be used to protect yourself, other employees, customers and the shoplifting suspect.

i. **Need for a Witness/Backup**
   i. When available a witness should be present during the detention and a witness must be present during the processing/paperwork stage of the detention.

j. **Local Laws (Obtain from Local Prosecutor)**
   i. Agents' responsibility to ensure knowledge of state and local laws pertaining to detentions, and charges filed.

k. **Reporting Questionable Detentions**
   i. Agents are required to contact the ZLPS on all questionable detentions immediately. If ZLPS cannot be contacted, the LP Manager or Division LP Office is to be notified.

l. **Actual Stops (How to Approach)**
   i. Hands on training with a current LP Agent Trainer/ZLPS.

m. **Returning to the Store**
   i. The witness should lead the subject back into the store and the agent should follow behind the subject.

n. **Miranda Warning (Not Needed)**
   i. We do not read subject their Miranda Warning, because we do not arrest individuals, we detain individuals for the authorities.

o. **Contacting Police (Record Time)**
   i. When contacting the police, we need to record the time of the call. After 30 minutes and the police have not yet arrived, we call back to get an estimated time of arrival. We record all times called and the arrival of the police.

p. **Overall Demeanor/Professionalism**
   i. We will present ourselves in a professional manner with everyone, at all times before, during and after the detention.

q. **Difficult or Violent Subject**
   i. If the detention develops into a dangerous/combative situation, all efforts to detain the suspect(s) must stop.

r. **Incompetent**
   i. Charges will not be filed on any subject with an obvious mental illness.

Version Date 11/11/05

s. **Pregnant. Elderly**
  i. Charges will not be filed on anyone who appears to be pregnant.
  ii. Charges will not be filed on anyone that is 65 years of age or older.

t. **Juveniles, Parents**
  i. Charges will not be filed on anyone that is 14 years of age or younger.
  ii. Any subject that is 14 years of age or younger can only be released to their parent or legal guardian.
  iii. If parent or legal guardian cannot be contacted, the subject must be turned over to the local authorities without charges being filed.

u. **Theft of Inexpensive Items**
  i. Charges will not be filed for theft of $10.00 or less.

v. **Decision to Prosecute**
  i. We will prosecute providing the following criteria has been met:
    1. Agent has completed a good detention (All Four (4) Elements are present).
    2. The dollar amount is over $10.00.
    3. The subject is between the ages of 15 and 64. The subject does not appear to be pregnant. The subject does not suffer from an obvious mental illness.

w. **Dismissal of Charges (Only Divisional Director)**
  i. Charges may only be dismissed with the approval of the Divisional Director of Loss Prevention.
  ii. Criminal Trespass may only be lifted with approval from the Loss Prevention Manager.

x. **Role Play (Week 3)**
  i. With the ZLPS on the making of a detention.

y. **Security/Chain of Custody of Evidence**
  i. Agents are responsible for security of all evidence for shoplifters or internal investigations (prior to ZLPS arriving).
  ii. Agents are responsible for the transportation of evidence to court and ensuring the chain of custody is not broken.

z. **Photographing Evidence**
  i. Agents will be responsible to photograph all evidence for a shoplifting detention. The evidence must be laid out in the order it is put in the report for easy identification.
  ii. Agents will not photograph any person 17 years of age or younger.
  iii. All photos should have a head shot only. No other body parts should be photographed.
  iv. **Handling Perishable/Returning to Stock**

      v.  We must never keep perishable product for evidence. Contact must be made with the local prosecutor pertaining to perishable evidence, to see if needed, can we bring a like item, not the exact item for a court case.

**aa. Search and Seizure**

      i.  We do not conduct search and seizures. However, if an agent feels they have detained a booster, they must contact their ZLPS and the ZLPS will decide if we will ask the authorities to try and obtain a consensual search of the vehicle.

**bb. Evidence Tags**

      **i.**  Evidence tags will be placed on any evidence that must be held for a later court case and logged in the evidence log.

# I. Communication

**a. District Loss Prevention Supervisor (ZLPS)**

      i.  ZLPS must be contacted on any and all issues concerning internal theft, external theft groups, questionable detentions, shrink, risk management, physical altercations, and food safety issues within the store.

**b. Members of Management**

      i.  Agents as soon as they arrive at a facility must contact the person in charge to make them aware they are in the facility.

      ii.  Agents will communicate with management issues that are seen and items we corrected during our time in the store.

**c. Other LP Employees**

      i.  Agents should always communicate with other LP Agents concerning theft issues, theft rings, camera issues, and any other potential shrink/risk issues.

**d. Sales Floor Employees**

      i.  Agents should communicate with sales floor employees to discover what type of items, where they are finding empty packages and the time frame issues seem to be happening in the store.

**e. Honesty in Communication**

      i.  LP communication must always be factual; we do not participate in rumors, gossip or speculation.

**f. Questionable Detentions**

      i.  Agents are required to contact the ZLPS on all questionable detentions immediately. If ZLPS cannot be contacted, the LP Manager or Division LP Office is to be notified.

**g. Confidential Information**

      **i.**  Confidential information is on a need to know basis only. Agents must never discuss confidential information with anyone without discussing it with their ZLPS first.

## J. Security Measures
   **a. Maintenance of CCTV System**
   - i. Agents are required to always check the CCTV system of a store they are working in.  If there are any CCTV issues, they must immediately call the ZLPS.
   - ii. If agents have had the training to troubleshoot the issues they should try to make repairs with your ZLPS approval.
   - iii. Agents need to make sure the system is recording.  If they cannot get the unit recording, notify the ZLPS.
   - iv. Agents must not leave CCTV systems in sequence.

   **b. Dome Placements (Do's and Don'ts)**
   - i. Domes or cameras are NEVER to be placed in the RESTROOMS.

   **c. Moving Camera to Different Location**
   - i. Cameras and domes should never be moved without the permission or direction of the ZLPS.

   **d. Signing**
   - i. Agents are required to get the LP signing in a store to ensure it meets the minimum requirements.

   **e. Maintaining Clean System**
   - i. Agents are required to always check the cleanliness of the monitors and LP Office when in a store.
   - ii. If they need to be cleaned, it is the agent's responsibility to clean them (both monitors and LP Office).

## K. Court
   **a. Testifying in Court**
   - i. Agents may be required to testify in court concerning criminal proceedings of a shoplifter.
   - ii. The agent is responsible to ensure all witnesses are in court.

   **b. Dress/Demeanor**
   - i. Agents must dress and act in a professional matter, agents will be representing the Company.

   **c. Evidence Brought to Court**
   - i. Agents will be responsible to have the evidence in court and to ensure the chain of custody is not broken.

   **d. Witness Notified to Appear in Court**
   - i. The agent is responsible to ensure all witnesses are in court.

   **e. Rapport with Prosecutor**
   - i. Agents must know what the prosecutor in their jurisdictions requires for charges and for court proceedings.

   **f. Rapport with Law Enforcement**
   - i. Hands on training with the ZLPS and training agent.

   **g. Legal Terminology**
   - i. Hands on training with the ZLPS and training agent.

Version Date 11/11/05